43 F.3d 18
 1995 A.M.C. 1805
 Marjorie ZICHERMAN, individually and as executrix under the
estate of Muriel A.M.S. Kole; Muriel Mahalek,
mother and next of kin of Muriel A.M.S.
Kole,
Plaintiffs-
Appellees/Cross-
Appellants,
Michael Kole, Plaintiff,
v.
KOREAN AIR LINES CO., LTD., Defendant-Appellant/Cross-Appellee.
 Nos. 542, 667, Dockets 93-7490, 93-7546.
 United States Court of Appeals,
Second Circuit.
 Petition for Rehearing Submitted Nov. 17, 1994.
Decided Dec. 5, 1994.
 
 W. Paul Needham, Boston, MA (Needham & Warren, Boston, MA, Kevin M. Hensley; Christopher Lovell, New York City, of counsel), for plaintiffs-appellees/cross-appellants.
 Andrew J. Harakas, New York City (Condon & Forsyth, George N. Tompkins, Jr., Jeanine C. Veracoechea, George N. Tompkins, III, Peter F. Tamigi, of counsel), for defendant-appellant/cross-appellee.
 Before: LUMBARD, VAN GRAAFEILAND, and WINTER, Circuit Judges.
 LUMBARD, Circuit Judge:
 These appeals were argued on October 28, 1993. We delayed our determination pending a decision in In re Air Disaster at Lockerbie, Scotland on December 21, 1988, 37 F.3d 804 (2d Cir.1994) ("Lockerbie II "), which already had been heard by a different panel on May 19, 1993.
 Korean Air Lines Co., Ltd. ("KAL") appeals from a judgment of the Southern District of New York (Motley, J.) entered on April 12, 1993, following a jury verdict which awarded damages of $251,000 to Marjorie Zicherman and $124,000 to Muriel Mahalek, the surviving sister and mother, respectively, of KAL passenger Muriel Kole. After trial, the district court granted prejudgment interest on the judgment, but discounted the jury award at a rate of 2% per annum to the date of the accident in calculating prejudgment interest. Zicherman v. Korean Air Lines Co., Ltd., 814 F.Supp. 605, 612 (S.D.N.Y.1993).
 KAL argues that: (1) federal maritime law precludes plaintiffs' recovery for loss of society; (2) federal maritime law precludes plaintiffs' recovery for mental injury or grief; (3) the evidence was insufficient to sustain an award to Zicherman as executrix of the estate for Kole's conscious pain and suffering; and (4) the evidence was insufficient to sustain an award to Zicherman for loss of support and loss of inheritance. Plaintiffs cross-appeal the court's discounting of prejudgment interest.
 The award for pain and suffering and the district court's calculation of prejudgment interest are affirmed. The awards for mental injury and for Mahalek's loss of society are vacated. The awards to Zicherman for loss of society, loss of support, and loss of inheritance are reversed and remanded.
 
 I.
 
 1
 On September 1, 1983, KAL flight KE007, en route from New York to Seoul, South Korea, strayed into Soviet airspace over the Sea of Japan and was shot down. All 269 persons on board died, including Muriel Kole. Zicherman and Mahalek, surviving relatives of Kole, brought suit in the Southern District of New York to recover damages.
 
 
 2
 The Judicial Panel on Multidistrict Litigation transferred all federal court actions arising out of the disaster to the District of Columbia for trial on the common issue of liability. In re Korean Air Lines Disaster of Sept. 1, 1983, 575 F.Supp. 342 (J.P.M.D.L.1983). After a jury determined that the crash was proximately caused by KAL's "willful misconduct," see In re Korean Air Lines Disaster of September 1, 1983, 932 F.2d 1475 (D.C.Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991), the Multidistrict Panel remanded the individual cases to their courts of origin to determine damages.
 
 
 3
 Prior to trial of Zicherman and Mahalek's damages, KAL moved for a determination that the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. Secs. 761-768 (1988), limited dependent survivors' recovery to pecuniary losses. Judge Motley denied the motion, holding that plaintiffs as close surviving relatives could recover for loss of love and affection ("loss of society") and for mental injury and grief, and that Zicherman as executrix of Kole's estate could recover for Kole's pre-impact conscious pain and suffering. In re Korean Air Lines Disaster of Sept. 1, 1983, 807 F.Supp. 1073, 1080-88 (S.D.N.Y.1992).
 
 
 4
 At trial, two expert witnesses testified as to Kole's conscious pain and suffering. James Foody, an aeronautical engineer, testified that the Soviet aircraft fired two missiles, which struck the KAL plane at an altitude of 35,000 feet; that the missiles probably caused a five foot hole in the rear fuselage; and that the plane remained airborne for twelve minutes thereafter. Robert Elzy, an aviation physiologist, testified that such a hole would cause rapid decompression of the plane; that passengers would experience intense pain in their ears, sinuses, lungs, stomach, and intestines due to decompression; and that passengers had sufficient time to don oxygen masks which would allow them to remain conscious during the plane's descent.
 
 
 5
 Zicherman testified that she had received financial assistance from Kole. Kole had paid Zicherman's wedding expenses and had volunteered to finance Zicherman's purchase of a new home. Prior to Kole's flight, Zicherman--who was then pregnant--received an envelope to be opened in the event of Kole's death; the envelope contained a letter describing Kole's assets and stating, "[t]ake everything and spend it on yourself and the baby, if anything happens to me." In contrast, Mahalek stated on cross-examination that she was never financially dependent on Kole.
 
 
 6
 The jury returned a total verdict of $375,000 as follows:
 
 Mahalek
 
 7
 1. Mental injury $ 96,000
 
 
 8
 2. Loss of society $ 28,000
 
 Zicherman (personal capacity)
 
 9
 3. Mental injury $ 65,000
 
 
 10
 4. Loss of society $ 70,000
 
 
 11
 5. Loss of support $ 5,000
 
 
 12
 6. Loss of inheritance $ 11,000
 
 Zicherman (as executrix of Kole's estate)
 
 13
 7. Kole's pain and suffering $ 100,000
 
 
 14
 The district court ruled that plaintiffs were entitled to prejudgment interest. The court discounted the judgment back to the date of the accident at a rate of 2% per annum and awarded prejudgment interest on that amount.
 
 II.
 
 15
 Where injuries occur on an international flight, the Warsaw Convention provides an exclusive cause of action. See Convention for the Unification of Certain Rules Relating to International Transportation by Air, done at Warsaw, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11, reprinted at 49 U.S.C.App. Sec. 1502 note (1988); In re Disaster at Lockerbie, Scotland on December 21, 1988, 928 F.2d 1267, 1274-80 (2d Cir.) ("Lockerbie I "), cert. denied, --- U.S. ----, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). However, because the Warsaw Convention is silent on the question of damages, we look to federal law to decide such issues. Lockerbie I, 928 F.2d at 1278-79.
 
 
 16
 KAL argues that because flight KE007 was shot down over non-territorial waters, the applicable law is DOHSA, which expressly limits recovery to pecuniary loss. 46 U.S.C.App. Sec. 762; Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 622-26, 98 S.Ct. 2010, 2013-15, 56 L.Ed.2d 581 (1978). We disagree.
 
 
 17
 In Lockerbie I, we adopted the federal common law to govern causes of action under the Warsaw Convention. 928 F.2d at 1278. In Lockerbie II, we held that damages under the Warsaw Convention should be determined "by an examination of maritime law, which is probably the oldest body of federal common law." 37 F.3d at 828. While two maritime statutes--DOHSA and the Jones Act, 46 U.S.C. app. Sec. 688 (1988)--preclude recovery for non-pecuniary loss, general maritime cases not brought under such statutory restrictions allow recovery. Lockerbie II, 37 F.3d at 829; Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 585-88, 94 S.Ct. 806, 814-16, 39 L.Ed.2d 9 (1974) (recognizing loss of society damages as remedy available under general maritime law). Looking at the language and underlying policies of the Warsaw Convention, we concluded that compensatory, non-pecuniary damages are appropriate under the Convention. Lockerbie II, 37 F.3d at 828-29. Accordingly, we held that under the general maritime principles of Gaudet and its progeny, the Warsaw Convention permits recovery for loss of society. Id. at 829.
 
 
 18
 KAL seeks to distinguish the Lockerbie decisions as involving an accident over dry land, whereas the present action involves an accident over water. However, as we have stressed, a uniform law should govern Warsaw Convention cases. Lockerbie I, 928 F.2d at 1278-79. Adopting one rule for Convention cases involving accidents over land and another for accidents over water would defeat such uniformity.
 
 
 19
 Our holding is consistent with the Congressional scheme under DOHSA, which was enacted in 1920 to create a federal cause of action for accidental deaths occurring on the high seas. The Supreme Court has held that DOHSA preempts state causes of action in disputes arising from accidental deaths in non-territorial waters. Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (applying DOHSA to offshore helicopter crash). In contrast to Tallentire, however, the present causes of action arise not under domestic law but under the Warsaw Convention, an international treaty. Unlike Tallentire, therefore, the question before us is not whether to apply federal or state law, but rather which federal law to apply. We cannot reconcile DOHSA's limitation of damages to pecuniary loss with the "aim of the Convention's drafters and signatories ... to provide full compensatory damages for any injuries or death covered by the Convention," Lockerbie II, 37 F.3d at 829, including non-pecuniary loss. In order to maintain a uniform law under the Warsaw Convention, we find general maritime law, rather than DOHSA, more appropriate. See, e.g., Domangue v. Eastern Air Lines, Inc., 722 F.2d 256, 262 (5th Cir.1984) ("[T]he Warsaw Convention and Montreal Agreement were intended to act as a uniform international law which supplants each member nation's varied laws.").
 
 
 20
 Under federal maritime law, the rule is well-established that only dependents may recover damages for loss of decedent's society. Wahlstrom v. Kawasaki Heavy Industries, Ltd., 4 F.3d 1084, 1092 (2d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994); Anderson v. Whittaker Corp., 894 F.2d 804, 811-12 (6th Cir.1990); Sistrunk v. Circle Bar Drilling Co., 770 F.2d 455 (5th Cir.1985), cert. denied, 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986); but see Sutton v. Earles, 26 F.3d 903, 914-17 (9th Cir.1994) (allowing nondependent parents to recover loss of society damages in general maritime action). No doubt this rule denies recovery to some deserving parties; nondependent survivors may feel the loss of a loved one as keenly as dependent survivors. However, the inherent concerns of vagueness and uncertainty "necessitate[ ] that we draw a line between those who may recover for loss of society and those who may not." Miles v. Melrose, 882 F.2d 976, 989 (5th Cir.1989), aff'd sub nom. Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). This distinction between dependents and nondependents has been commended "as the most rational, efficient and fair." Miles, 882 F.2d at 989.
 
 
 21
 In Lockerbie II, we extended to Warsaw Convention cases the general maritime rule limiting loss of society damages to dependents, see 37 F.3d at 830. Under that rule, Zicherman and Mahalek may recover loss of society damages only if they were dependents of Kole at the time of her death.
 
 
 22
 The test of dependency is the existence of "a legal or voluntarily created status where the contributions are made for the purpose and have the result of maintaining or helping to maintain the dependent in [her] customary standard of living." Petition of United States, 418 F.2d 264, 272 (1st Cir.1969). Because Judge Motley did not explicitly instruct the jury to condition their awards for loss of society on finding such a status, we scrutinize the record to determine what findings a jury could make on this issue.
 
 
 23
 KAL contends that, as a matter of law, Mahalek may not recover loss of society damages. The record shows that Mahalek offered no evidence to support a claim of dependency. Further, Mahalek specifically conceded on cross-examination her lack of dependence. Presented with such evidence, no jury could find Mahalek entitled to recover damages as a dependent. We reverse and vacate the award to Mahalek accordingly.
 
 
 24
 KAL further argues that the evidence submitted by Zicherman is insufficient to satisfy the test stated above. In contrast to Mahalek, Zicherman testified to generous financial assistance from Kole, including an offer to finance Zicherman's purchase of a house. Yet the record does not establish that Kole in fact financed such a purchase. Presented with such evidence, the jury could find the test of dependency satisfied, but it also could find this test not satisfied. We reverse and remand the award of loss of society damages to Zicherman, pending trial of this issue.III.
 
 
 25
 Although federal maritime law permits dependent survivors to recover damages for loss of decedent's society, it precludes survivors from recovering additional damages for their grief or mental injury. Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 622, 98 S.Ct. 2010, 2013, 56 L.Ed.2d 581 (1978); Gaudet, 414 U.S. at 585-86 n. 17, 94 S.Ct. at 815 n. 17. Nonetheless, the district court determined that this rule was inapplicable to Warsaw Convention cases. In re Korean Air Lines Disaster of Sept. 1, 1983, 807 F.Supp. at 1085-86. The court reasoned that the Warsaw Convention permits recovery for "damages sustained," and that the mental injury or grief of surviving relatives is one such species of damages.
 
 
 26
 We disagree. As we stated in Lockerbie II, federal maritime law supplies the measure of damages for injuries arising out of accidents governed by the Warsaw Convention. As federal maritime law does not permit surviving relatives to recover damages for mental injury or grief in addition to damages for loss of society, we reverse and vacate the awards to Zicherman and Mahalek for mental injury.
 
 IV.
 
 27
 In order to recover for Kole's pre-death pain and suffering, Zicherman, as executrix, was required to provide evidence from which the jury could infer that Kole: (1) survived the missile explosions; (2) was conscious and aware for a period of time; and (3) experienced pain and suffering. To support the claim, Zicherman introduced the testimony of Foody and Elzy.
 
 
 28
 KAL contends that Zicherman did not satisfy her evidentiary burden because she offered no direct evidence on any of these points, and that the expert testimony was mere generalized testimony concerning the possible effects of a missile strike on a passenger-filled Boeing 747 flying at 35,000 feet. We disagree. Eyewitness testimony as to the decedent's pain and suffering is not essential to recovery in fatal aircraft accidents, because such evidence "is difficult if not impossible to obtain." Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 206 (2d Cir.1984). Obviously, it was impossible to produce such evidence in this case. Plaintiffs satisfied their burden by providing circumstantial evidence from which "it can reasonably be inferred that the passenger underwent some suffering before the impact." Id. A jury which accepted Foody and Elzy's testimony could reasonably infer that Kole remained conscious for a period of up to twelve minutes after the missile strike, during which time she experienced intense, decompression-induced pain. We affirm the award to Zicherman, as executrix of Kole's estate, for Kole's pre-death conscious pain and suffering.
 
 V.
 
 29
 Damages for loss of support and loss of inheritance are well-recognized wrongful death remedies under maritime law. See Gaudet, 414 U.S. at 584 & n. 11, 94 S.Ct. at 814 & n. 11; Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d 77, 80 (9th Cir.1983). However, courts generally have conditioned such awards on a showing of full or partial dependency. See, e.g., Wahlstrom, 4 F.3d at 1093 ("Loss of support or services is compensable, but only to the extent that the [non-dependent parents] anticipated future pecuniary benefits from support or services to be rendered to them by their deceased son."); Evich v. Connelly, 759 F.2d 1432, 1433-34 (9th Cir.1985) (denying recovery for pecuniary loss to non-dependent siblings); In re DFDS Seaways (Bahamas) Ltd., 684 F.Supp. 1160, 1165 (S.D.N.Y.1988) (parent who alleges partial dependency on decedent states claim for loss of support or services). Accordingly, we reverse and remand the awards to Zicherman for loss of support and loss of inheritance for determination of the issue of dependency.
 
 VI.
 
 30
 In Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), the Supreme Court recognized that courts may discount damages to their present value to reflect the impact of inflation on future wages and prices. Traditionally, courts have used this technique in connection with awards to reflect foregone future wages or other future loss. See, e.g., Chiarello v. Domenico Bus Service, Inc., 542 F.2d 883, 886 & n. 4 (2d Cir.1976). The district court discounted the entire award to the date of the accident, including that portion reflecting plaintiffs' loss between the date of the accident and the jury verdict, as a precursor to awarding prejudgment interest. We are not persuaded by the plaintiffs that the court should have discounted only that portion of the award reflecting future loss from the date of the verdict.
 
 
 31
 The calculation of prejudgment interest is a discretionary matter for the district court. United States v. Seaboard Surety Co., 817 F.2d 956, 966 (2d Cir.), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 115 (1987). A jury verdict rendered in 1992 for an accident that occurred in 1983 may well reflect the inflationary impact of the intervening nine years; the court did not abuse its discretion. We affirm the district court's calculation of prejudgment interest.
 
 
 32
 The award to Zicherman as executrix of Kole's estate for Kole's pre-death pain and suffering and the court's calculation of prejudgment interest are affirmed. The awards to Zicherman and Mahalek for mental injury and the award to Mahalek for loss of society are reversed and vacated. The awards to Zicherman for loss of society, loss of support, and loss of inheritance are reversed and remanded for proceedings consistent with this opinion.