Barbara Swift **HOLLIE**, as the Personal Representative of and Administratrix of the Estate of Frances Mae Swift, Deceased, Plaintiff–Appellee/Cross–Appellant,

v.

**KOREAN AIR LINES CO., LTD.,** Defendant–Appellant/Cross–Appellee.

Nos. 907, 1057, Docket 94–7208, 94–7218.

United States Court of Appeals, Second Circuit.

Argued April 5, 1995.

Decided July 12, 1995.

Andrew J. Harakas, Tompkins, Harakas, Elsasser & Tompkins, White Plains, NY (George N. Tompkins, Jr., Jeanine C. Veracoechea, Tompkins, Harakas, Elsasser & Tompkins, on the brief), for defendant-appellant/cross-appellee.

David M. Schuller, Law Offices of F. Lee Bailey and Aaron J. Broder, New York City (Aaron J. Broder, Law Offices of F. Lee Bailey and Aaron J. Broder, on the brief), for plaintiff-appellee/cross-appellant.

Before: NEWMAN, Chief Judge, and WINTER and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

This is an appeal by Korean Air Lines Co., Ltd. ("KAL") and a cross-appeal by Barbara Swift Hollie after a jury trial before Magistrate Judge Buchwald [1] concerning damages for the wrongful death of Frances Mae Swift.

---

1. The parties consented to trial before a United States Magistrate Judge under 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. We hear this appeal pursuant to 28 U.S.C. § 636(c)(3) and Fed.R.Civ.P. 73(c).

Hollie is the personal representative and administratrix of the estate of Frances Mae Swift. Swift died when KAL Flight 007 was shot down by a Soviet fighter on September 1, 1983.

After a consolidated trial on KAL's liability, the Judicial Panel on Multidistrict Litigation remanded the individual cases to their original courts for damage trials. Following the entry of judgment in the present case, and following the briefing of this appeal, we decided another appeal involving the crash of KAL Flight 007. *Zicherman v. Korean Air Lines Co.,* 43 F.3d 18 (2d Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995). *Zicherman* and the present case address many of the same legal issues. We assume familiarity with *Zicherman* and set forth only those facts necessary for the resolution of this appeal.

## BACKGROUND

Frances Mae Swift was a passenger on Flight 007 assigned to seat number 27D. After Flight 007 was struck by shrapnel from a Soviet proximity missile, it remained airborne for up to twelve minutes before crashing into the sea. The passengers likely survived the impact of the explosion and had time to don oxygen masks. All passengers perished in the subsequent crash.

Swift had been an occupational therapist earning a salary of approximately $30,000 per year that was supplemented by a private occupational therapy practice. She gave at least partial support to her developmentally disabled brother Alton Swift; her visually impaired sister, Barbara Swift Hollie; her aunt, Emma Bradley; and her nieces and nephews, Mark Anthony Swift, Glen Eric Lee, Gail Hutcherson Orr, and Charnell Letrice Swift. Her relationship with her nieces and nephews—Hollie's children—was very close, although she lived in Detroit, Michigan and her nieces and nephews lived in Rochester, New York. The nieces and nephews viewed her as a role model, and she provided them with mentoring and advice. Swift made several short visits each year to see her sister's children.

Prior to the trial on damages, the district court dismissed the claims against KAL for damages for loss of society and for grief of survivors. The jury returned a verdict awarding damages for: (i) pain and suffering to Swift's estate; (ii) loss of support to Swift's siblings and aunt, and (iii) loss of support and loss of nurture and guidance to her nieces and nephews. The district court set aside the damage awards for loss of nurture and guidance.

In its appeal, KAL challenges: (i) the sufficiency of the evidence supporting the pain and suffering award to the Swift estate; and (ii) the sufficiency of the evidence supporting the award to Swift's brother of $43,000 for loss of support. In her cross-appeal, Hollie challenges: (i) the setting aside of the jury awards to decedent's nieces and nephews; (ii) the dismissal of claims for grief of survivors; and (iii) the dismissal of claims for loss of society.

## DISCUSSION

■ The Warsaw Convention governs personal injury actions by passengers arising out of international flights. *Zicherman,* 43 F.3d at 21; *In re Air Disaster at Lockerbie, Scot.,* 928 F.2d 1267, 1273–78 (2d Cir.) (*"Lockerbie I"*), *cert. denied,* 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). However, "because the Warsaw Convention is silent on the question of damages, we look to federal law to decide such issues." *Zicherman,* 43 F.3d at 21; *see also Lockerbie I,* 928 F.2d at 1278–79. Thus, we apply federal maritime law, which governs the availability of damages for injuries occurring on international flights. *In re Air Disaster at Lockerbie Scot.,* 37 F.3d 804, 828–29 (2d Cir.1994) (*"Lockerbie II"*), *cert. denied,* —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995).

A. *Pain and Suffering*

■ KAL challenges the sufficiency of the evidence supporting the pain and suffering award to the Swift estate. In evaluating the legal sufficiency of the evidence, we view it in the light most favorable to Hollie. *See, e.g., Toltec Fabrics v. August Inc.,* 29 F.3d 778, 782 (2d Cir.1994).

■ Two expert witnesses testified for the plaintiff at trial on the issue of pre-death pain and suffering. Captain James McIntyre is an experienced Boeing 747 pilot and aircraft accident investigator. He testified that Flight 007's tail was struck by shrapnel from a proximity missile. This shrapnel probably caused a hole smaller than two feet in diameter, resulting in decompression but leaving the passengers sufficient time to don oxygen masks. McIntyre testified that, based upon his estimate of the extent of damage the aircraft sustained, all passengers survived the initial impact of the shrapnel from the missile explosion. In McIntyre's expert opinion, at least twelve minutes elapsed between the impact of the shrapnel and the crash of the plane, and the passengers remained conscious throughout.

Robert Elzy is an aviation physiologist who testified about the effects of decompression on the human body. Elzy described the physical pain in the ears, sinuses, and intestines caused by changes in altitude and cabin pressure. In his opinion, the passengers would have felt this pain throughout the ordeal.

This evidence is sufficient to support a finding that Swift survived the missile explosion, remained conscious, and suffered pain. We have repeatedly held that an award for conscious pain and suffering can be based on such evidence. *See Zicherman,* 43 F.3d at 23; *Shatkin v. McDonnell Douglas Corp.,* 727 F.2d 202, 206 (2d Cir.1984).

Indeed, the evidence offered by Hollie on this issue differed little from the evidence upheld as sufficient in *Zicherman.* In that case, the plaintiff also offered the testimony of expert witnesses. An aeronautical engineer testified that the missile blew a hole in Flight 007's rear fuselage and that the plane probably remained airborne for twelve minutes after being struck. *Zicherman,* 43 F.3d at 20–21. Robert Elzy, the aviation physiologist who testified in the present case, testified that a hole would cause decompression and that passengers had sufficient time to don oxygen masks which would allow them to remain conscious during the plane's descent. At oral argument, counsel for KAL conceded that the only distinction between Swift and the plaintiff in *Zicherman* was the location of their assigned seats. This distinction is of no relevance where a plaintiff has offered evidence from which it can reasonably be inferred that all passengers suffered before impact. *See id.* at 23.

### B. *Loss of Support*

KAL challenges the sufficiency of the evidence underlying the jury's award of $43,000 for loss of support to decedent's brother, Alton Swift.

■ In order to obtain an award for loss of support under federal maritime law, there must be a showing of full or partial dependency, *Zicherman,* 43 F.3d at 23, and of the extent of lost pecuniary benefits, *Wahlstrom v. Kawasaki Heavy Indus.,* 4 F.3d 1084, 1093 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994). *See First Nat'l Bank v. National Airlines,* 288 F.2d 621, 624 (2d Cir.) (distinguishing dependency from pecuniary loss), *cert. denied,* 368 U.S. 859, 82 S.Ct. 102, 7 L.Ed.2d 57 (1961). Mathematical certainty is unnecessary to prove the amount of pecuniary loss, but there must be some evidence from which the jury can estimate future support without engaging in conjecture. *See Shatkin,* 727 F.2d at 207.

■ KAL does not challenge the finding of dependency but contends that there was no basis for the jury to infer the amount of pecuniary loss. However, the testimony of Alton Swift, Barbara Swift Hollie, and the aunt with whom Alton Swift resides, Emma Bradley, was sufficient to allow the jury to find that Swift would have contributed approximately $2,000 per year in benefits to Alton for the remainder of her working life. This testimony indicated that Swift took Alton shopping, bought him gifts, and gave him food. We conclude that it was sufficient to support the verdict.

### C. *Loss of Nurture and Guidance*

Hollie challenges the district court's grant of KAL's motion to set aside the jury award to Swift's nieces and nephews for loss of nurture, care, and guidance.

■ Damages for the loss of nurture are intended to compensate for the loss of parental guidance and intellectual and moral training to a child. *See Solomon v. Warren,* 540 F.2d 777, 788 (5th Cir.1976), *cert. dismissed,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977); *Moore–McCormack Lines v. Richardson,* 295 F.2d 583, 593 n. 9a (2d Cir.1961), *cert. denied,* 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962); *Red Star Towing & Transp. Co. v. The "Ming Giant",* 552 F.Supp. 367, 377 (S.D.N.Y.1982).

■ Although the children of a decedent may recover damages for loss of nurture, *see Lockerbie II,* 37 F.3d at 830, we have never determined whether a person who is not actually a biological or adoptive offspring may recover damages for loss of nurture. At least one state's highest court has allowed recovery for loss of nurture by a person other than the children of the deceased. *Gonzalez v. New York City Hous. Auth.,* 77 N.Y.2d 663, 569 N.Y.S.2d 915, 918, 572 N.E.2d 598, 601 (1991) (permitting adult grandchildren of decedent to recover damages for loss of guidance). Significantly, however, in *Gonzalez* the deceased grandmother "had raised" her grandchildren because their father had died and their mother was mentally ill. *Id.* at 916, 572 N.E.2d at 599.

There is little reason for us to hold that, as a matter of general federal maritime law, damages are available for the loss of nurture only where the decedent is a biological or adoptive parent. If the decedent had fully undertaken a parent's role, both the nature and extent of damage would be similar, and a distinction based solely on birth or legal relationship would be arbitrary. Damages for loss of nurture assume the functional equivalent of the singular relationship of parent and child. The death of an adoring neighbor or schoolteacher will not support an award for loss of nurture. Conversely, a person raised by a foster parent or grandparent might be able to recover for loss of nurture, so long as the decedent had fulfilled a parental role. *Cf., O'Rourke v. Eastern Air Lines,* 730 F.2d 842, 859 (2d Cir.1984) (reducing award for loss of parental guidance and training because decedent was at sea ten months per year).

■ Swift's nieces and nephews undoubtedly received guidance from her, but Swift did not act as their parent. Swift lived in Detroit while her nieces and nephews lived in Rochester with their mother, Barbara Swift Hollie. Although Swift spoke regularly to the children about important topics such as education, visited them several times a year, and acted as a role model and mentor, this interaction never rose to the level of full parental guidance.

### D. Grief of Survivors

■ Hollie cross-appeals from the dismissal of her claim for damages for the grief suffered by Swift's survivors. However, we have held that federal maritime law does not permit recovery of damages for such grief. *Zicherman,* 43 F.3d at 23.

### E. Loss of Society

Hollie's cross-appeal challenges the district court's pre-trial ruling dismissing claims for loss of society. Subsequent to the district court's ruling, we held that damages for loss of society are available in cases brought under the Warsaw Convention, *Lockerbie II,* 37 F.3d at 828–30, whether the accident occurred over water or land, *Zicherman,* 43 F.3d at 21.

■ Only spouses and dependents may recover for loss of society. *Zicherman,* 43 F.3d at 22; *Lockerbie II,* 37 F.3d at 830. "The test of dependency is the existence of 'a legal or voluntarily created status where the contributions are made for the purpose and have the result of maintaining or helping to maintain the dependent in [his or her] customary standard of living.'" *Zicherman,* 43 F.3d at 22 (quoting *Petition of United States,* 418 F.2d 264, 272 (1st Cir.1969)).

In the present case, the jury was properly instructed on dependency. The jury charge stated:

> In order for a relative to be dependent under the law the pecuniary contribution from the decedent must have been in whole or in part a means of maintaining the relative in the manner in which they

had been living. And you must also consider whether the relative looked forward to and relied upon the continuance of decedent's contribution to maintain that standard of living. The provision of money or necessary items on a regular or systematic basis tends to support a finding of dependency.

This charge comported with *Zicherman* in establishing dependency for the purposes of assessing damages based on loss of society. The jury found that Swift's siblings, her aunt, and her nieces and nephews were dependents. That finding has not been challenged in KAL's appeal.

Hollie is therefore entitled to have a jury assess the claims for loss of society made by these seven relatives. The parties agreed at oral argument that a subsequent trial could be limited to damages for loss of society. We therefore remand for such a trial.

■ We leave to the district court the task of determining whether the jury should be informed of the prior award for loss of support. Hollie also seeks a ruling that, at the trial for damages on loss of society, the dependent relatives be permitted to testify as to the effect of the loss of the decedent's love and companionship. Loss of society damages represent compensation for "loss of positive benefits" while mental anguish or grief damages represent compensation for the "emotional response to . . . wrongful death." *Sea–Land Servs. v. Gaudet,* 414 U.S. 573, 585–86 n. 17, 94 S.Ct. 806, 816 n. 17, 39 L.Ed.2d 9 (1974). We leave to the district court the task of determining whether particular evidence is relevant to establishing the loss of society or relevant only to establishing mental injury or grief.

### CONCLUSION

The jury's award for Swift's pain and suffering is affirmed. The award of damages to Alton Swift for loss of support is affirmed. The district court's grant of KAL's motion to set aside the jury award to Swift's nieces and nephews for loss of nurture is affirmed. The grant of KAL's motion to dismiss the claims for damages for grief of survivors is affirmed. The district court's grant of KAL's

pre-trial motion to dismiss the claims for damages for loss of society is reversed and remanded for trial.