Alexander ALCABASA, Appellant,

v.

KOREAN AIR LINES CO.,
LTD., Appellee.

No. 94–7013.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 19, 1995.

Decided Aug. 8, 1995.

Marvin L. Jeffers, New Orleans, LA, argued the cause and filed the brief for appellant.

Andrew J. Harakas, with whom George N. Tompkins, Jr., White Plains, NY, and Timothy J. Lynes, Washington, DC, were on the brief, argued the cause for appellee.

Before BUCKLEY, WILLIAMS, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

This case presents the single question of whether a relative of a passenger killed when Korean Air Lines flight 007 crashed into the Sea of Japan has standing to bring a wrong-

ful death suit against the airline without first being appointed the deceased's "personal representative" by a state court. The district court found that only the personal representative has standing to bring such an action. We affirm, although on the basis of a different analysis.

## I. BACKGROUND

On September 1, 1983, Korean Air Lines ("KAL") flight 007, bound for Seoul, South Korea, from New York via Anchorage, strayed into Soviet airspace, was shot down by a Soviet military aircraft, and crashed into the Sea of Japan. All 269 passengers on board died. To manage the proliferation of lawsuits that followed, the Judicial Panel on Multidistrict Litigation consolidated suits against KAL from around the country and assigned the matter to the U.S. District Court for the District of Columbia for a trial on the common issue of the airline's liability. *In re Korean Air Lines Disaster of Sept. 1, 1983,* 575 F.Supp. 342 (J.P.M.L.1983).

At the trial, the plaintiffs argued that the KAL flight crew erred in programming a navigational system prior to departing Anchorage; that the crew must have realized the error before or shortly after leaving Anchorage; and that rather than return and face possible disciplinary action, the crew decided to continue on the programmed course in spite of a known risk that the flight might stray into Soviet airspace. *See In re Korean Air Lines Disaster of Sept. 1, 1983,* 932 F.2d 1475, 1478 (D.C.Cir.1991) (*"KAL I"*). The jury returned a verdict of willful misconduct against KAL, which we affirmed. *Id.* at 1490. Individual actions were then returned to their courts of origin for the determination of damages. *See Zicherman v. Korean Air Lines Co.,* 43 F.3d 18, 20 (2d Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995).

Lilia Bayona was one of the passengers killed in the tragedy. In 1984, appellant Alexander Alcabasa, who claimed to be Ms. Bayona's widower, brought a wrongful death lawsuit against KAL in the U.S. District Court for the District of Columbia. There is no dispute that Mr. Alcabasa brought the suit in his individual capacity and was never appointed to serve as the personal representative of Ms. Bayona's estate. The following year, Lilia Bayona's brother, Felino Bayona, secured an appointment as the personal representative of his sister's estate by a state court in New Jersey, where Lilia was domiciled at the time of her death. In his capacity as personal representative, Felino Bayona filed suit against KAL in the U.S. District Court for the District of New Jersey. *Felino Bayona, as Administrator ad Prosequendum and General Administrator of the Estate of Lilia Bayona v. Korean Air Lines, Inc.,* No. Civ. A. 85–3819 (D.N.J.). Mr. Bayona and KAL negotiated a settlement of $450,000, and the case was dismissed in 1993.

Meanwhile, KAL filed a motion for summary judgment in Mr. Alcabasa's suit asserting that he lacked standing to bring it because he was not the personal representative of the deceased. The district court granted KAL's motion on the basis of three legal conclusions: First, the Warsaw Convention, which governs the case, leaves the question of standing to the local law of signatory states; second, District of Columbia wrongful death law is the appropriate local law; and third, District of Columbia law permits only the personal representative of the deceased to maintain a wrongful death action. *Alcabasa v. Korean Air Lines Co.,* No. Civ.A. 84–2647 (D.D.C. Nov. 4, 1993) (*"Memorandum Opinion"*). We find that the district court applied the wrong law but reached the correct result.

## II. ANALYSIS

### A. The Warsaw Convention

The parties agree that this wrongful death action arising out of an international air travel disaster is "governed by the terms of the Warsaw Convention, a multilateral treaty to which the United States has adhered since 1934." *KAL I,* 932 F.2d at 1484. *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, art. 1(1), 49 Stat. 3000, T.S. No. 876 (1934) ("Warsaw Convention"), *reprinted in* 49 U.S.C. app. § 1502 note (1988). Their dispute concerns the proper interpretation of the treaty's provisions concerning the

question of standing. Articles 17 and 24 are the Convention's relevant sections. The former establishes that

> [t]he Carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft. . . .

Warsaw Convention, art. 17, 49 U.S.C. app. § 1502 note. The latter provides:

> (2) In the cases covered by article 17 [damage actions can only be brought subject to the conditions and limits set out in the Convention], *without prejudice to the questions as to who are the persons who have the right to bring suit* and what are their respective rights.

*Id.,* art. 24 (emphasis added).

Mr. Alcabasa contends that the "without prejudice" clause of Article 24(2) implies that all parties who have wrongful death claims against a carrier may bring separate suits. His interpretation arguably finds support in a decision of the U.S. District Court for the Southern District of New York concerning the same disaster in *In re Korean Air Lines Disaster of Sept. 1, 1983,* 807 F.Supp. 1073 (S.D.N.Y.1992) (*"KAL–SDNY"*). That court found that "[t]he Warsaw Convention . . . does not limit recovery to the personal representative of the decedent and affirmatively provides for suit by persons other than passengers" and, in fact, cited our opinion in *KAL I* for this proposition. *KAL–SDNY,* 807 F.Supp. at 1080. For strategic reasons, KAL did not challenge this aspect of the district court's opinion in its subsequent appeal to the Second Circuit. *See Zicherman,* 43 F.3d 18. KAL argues here, however, that the *KAL–SDNY* decision was both incorrect and based on an erroneous reading of our opinion in *KAL I.*

■ We agree with KAL on both counts. To set the record straight, in *KAL I* we at no point discussed whether standing to bring a wrongful death suit was limited to a personal representative of a decedent, nor did we discuss the subject of personal representatives. In considering what types of damage awards were permitted by the Convention,

we found that "Article 24 allows contracting states to decide the standing and respective rights of claimants who seek recovery under Article 17." *KAL I,* 932 F.2d at 1485 (internal quotation marks omitted). Our discussion established that the Warsaw Convention not only does not create a single, uniform rule of standing but, quite to the contrary, defers such determinations to the legal regimes of the signatory states. We reiterate this interpretation here and note that it conforms with the views of other circuits that have examined Article 24(2). *See In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988,* 928 F.2d 1267, 1284 (2d Cir.1991) ("the drafters gave up any attempt to decide who could sue" but instead limited liability "no matter how many plaintiffs were involved or what their rights were under local law"); *In re Mexico City Aircrash of Oct. 31, 1979,* 708 F.2d 400, 414 (9th Cir.1983) (import of Article 24(2) is that "the question of who are the persons upon whom the action devolves in the case of death [is] to be left to local law apart from the Convention" (internal quotation marks omitted)).

### B.  Law Governing Standing to Sue

The novel legal question presented in this case is not whether standing must be determined by reference to the laws of the Convention's "contracting states," *KAL I,* 932 F.2d at 1485, but what that law is in this particular context. KAL argues that the question of Mr. Alcabasa's standing is controlled by the Death on the High Seas Act ("DOHSA"), which provides in pertinent part:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State . . . the personal representative of the decedent may maintain a suit for damages in the district courts of the United States. . . .

46 U.S.C.App. § 761 (1988).

■ In *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), the Supreme Court eliminated any doubt that DOHSA is applicable to accidents involving aircraft as well as ships by applying it to a helicopter crash 35 miles

off the Louisiana coast. *Id.* at 218, 106 S.Ct. at 2492. DOHSA applied, the Court reasoned, because the "helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an island ... to the shore." *Id.* at 219, 106 S.Ct. at 2492. The Court also determined that the statute preempts State law where it applies. *Id.* at 232, 106 S.Ct. at 2499. Because KAL flight 007's function—ferrying passengers across the Pacific Ocean—was also one "traditionally performed by waterborne vessels" and because Mr. Alcabasa does not claim that the "wrongful act" that "caused" Ms. Bayona's death did not occur on the high seas, we find that DOHSA is the applicable law of the United States in this case. Under DOHSA, only the personal representative of the deceased may bring suit for wrongful death, *see, e.g., Futch v. Midland Enters., Inc.,* 471 F.2d 1195, 1196 (5th Cir.1973); 2 *Benedict on Admiralty* § 83(a)(1) (7th ed. 1995); and a "personal representative" is by definition a court-appointed executor or administrator of an estate, not merely an heir. *Briggs v. Walker,* 171 U.S. 466, 471, 19 S.Ct. 1, 3, 43 L.Ed. 243 (1898). Thus, Mr. Alcabasa's attempt to sue must fail.

Although the district court correctly concluded that standing under the Warsaw Convention is determined in accordance with "local law," it erred by assuming the relevant local law is the law of the District of Columbia. *Memorandum Opinion* at 5. When courts, including this one, determine that an international treaty leaves a certain policy determination to "contracting states," they refer to the laws of the nations that are signatories to the agreement, not the political subdivisions thereof. *See In re Mexico City,* 708 F.2d at 415 (questions of "who are the persons entitled to assert [a] cause of action [under the Warsaw Convention] may be determined by reference to ... federal statutes"). In many instances, of course, there is no single "law of the United States"; and the structure of our federal system requires reference to the laws of the various States to determine the relevant national law. Here, however, we are dealing with a federal statute, DOHSA, that preempts state law.

We are aware that, in *Zicherman,* the Second Circuit rejected KAL's similar argument that it should look to DOHSA to determine what types of damage claims are cognizable under the Warsaw Convention. 43 F.3d at 21. Instead, it referred to federal common law "general maritime principles," which, in that case, yielded a different result than DOHSA would have. *Id.* at 21–22. The court found that it could not "reconcile DOHSA's limitation of damages to pecuniary loss with the 'aim of the [Warsaw] Convention's drafters and signatories ... to provide full compensatory damages for any injuries or death covered by the Convention....'" *Id.* at 22 (quoting *In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988,* 37 F.3d 804, 829 (2d Cir.1994)). Whatever the merits of the Second Circuit's analysis of damages under the Convention, we are concerned here with the issue of standing, which Article 24 commits to the laws of the signatory states. In light of the Supreme Court's holding, in *Offshore Logistics,* that DOHSA governs tort claims arising out of accidents on the high seas, we must determine standing in accordance with its provisions.

Rather than argue that DOHSA does not apply to this case, Mr. Alcabasa asks that we ignore DOHSA and instead fashion a common law rule that would permit his suit. To do so would be equitable, he believes, because permitting only personal representatives to sue would subject the rights of the bereaved to the vagaries of state probate law and encourage races to the probate court. The problems embodied in such a rule are illustrated, in his opinion, by the facts of this case: Mr. Alcabasa alleges that Mr. Bayona secured his appointment as his sister's personal representative by fraudulently denying Mr. Alcabasa's existence to the New Jersey probate court.

Mr. Alcabasa's plea seems to assume that because the Warsaw Convention does not specify who has standing to sue, there is no governing law and, therefore, we have the discretion to create it as we see fit. He concedes that we might look to DOHSA for guidance, but believes we need not. This position reveals a fundamental misunderstanding of the text of the Warsaw Conven-

tion and of our role as interpreters of the law. Under Article 24(2) of the Warsaw Convention, it is the *"contracting states* [who] decide the standing ... of claimants...." *KAL I,* 932 F.2d at 1485 (emphasis added). The relevant "contracting state" in this case is the United States.

In discerning the underlying legal rule, we are bound by the applicable pronouncements of Congress. It is true that courts are often called upon to fashion common law rules to supplement maritime statutes because Congress has never enacted a comprehensive body of maritime law. *See Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978). But when "[t]he Death on the High Seas Act ... does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Id.* Mr. Alcabasa asks us to go even a step further than supplementing Congress's pronouncement: He requests that we ignore Congress's clear determination that only a personal representative may bring a wrongful death action arising from an accident on the high seas. We, of course, must decline.

■ Although it does not bear directly upon the resolution of this case, it is worth noting that where only a personal representative may maintain a wrongful death suit, persons in Mr. Alcabasa's position are not without recourse to protect their legal rights. Some courts have found, for example, that a potential beneficiary of a wrongful death claim may be permitted to intervene in a suit if he can establish that his interests are at odds with the decedent's personal representative. *See, e.g., Smith v. Clark Sherwood Oil Field Contractors,* 457 F.2d 1339, 1345 (5th Cir.1972). Furthermore, a personal representative has a fiduciary duty to bargain for the rights of all the decedent's beneficiaries and to turn over to them their appropriate share of any proceeds. *See, e.g., Chicago, Burlington & Quincy R.R. v. Wells–Dickey Trust Co.,* 275 U.S. 161, 163, 48 S.Ct. 73, 73–74, 72 L.Ed. 216 (1927); *Calton v. Zapata Lexington,* 811 F.2d 919, 922 (5th Cir.1987). A failure to do either can give rise to a cause of action against the personal representative. *Calton,* 811 F.2d at 922.

### III. CONCLUSION

Under United States law, as referenced by Article 24(2) of the Warsaw Convention, only the personal representative of Lilia Bayona may maintain a suit against KAL for her wrongful death. If Mr. Alcabasa did not receive proper compensation for the death of Ms. Bayona, he might have a cause of action against her personal representative, but he may not force the airline to litigate a claim it had a right to believe was settled in 1993. The decision of the district court granting summary judgment for KAL is therefore

*Affirmed.*