73 F.3d 884
 1996 A.M.C. 342, 64 USLW 2394, 95
Cal. Daily Op. Serv. 9371,
95 Daily Journal D.A.R. 16,335
 In the Matter of the Petition of F/V CAROLYN JEAN, INC., for
Limitation of or Exoneration From Liability,
Petitioner-Appellee,
v.
Robert J. SCHMITT, for the Estate of Timothy SCHMITT,
Claimant-Appellant.
 No. 94-35583.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 18, 1995.
Decided Dec. 11, 1995.
 
 Shane C. Carew, Seattle, Washington, for claimant-appellant.
 Michael H. Williamson and Sarah E. Hall, Madden, Poliak, Macdougall & Williamson, Seattle, Washington, for petitioner-appellee.
 Appeal from the United States District Court for the District of Alaska.
 Before: REINHARDT, TROTT, Circuit Judges, and SCHWARZER,* District Judge.
 OPINION
 TROTT, Circuit Judge:
 
 
 1
 Timothy Schmitt, a crewman, died when the fishing vessel BARBAROSSA disappeared in the Bering Sea. His estate appeals an order granting summary judgment in favor of the BARBAROSSA's owner, F/V Carolyn Jean, Inc. ("Carolyn Jean"), on the issue of whether Schmitt endured pre-death pain and suffering. This presents us with a close question of the kind one could expect on a law school exam. We hold that the evidence, when viewed in favor of the estate, supports the claim that Schmitt was conscious for at least some period of time after he suffered the injuries which resulted in his death, and therefore we reverse and remand the case for trial.[1]
 
 
 2
 Jurisdiction in the district court was proper under 28 U.S.C. Sec. 1333. 28 U.S.C. Sec. 1291 gives us jurisdiction over this timely appeal. The district court's grant of summary judgment is reviewed de novo. Fuller v. Golden Age Fisheries, 14 F.3d 1405 (9th Cir.1994).
 
 FACTS
 
 3
 Timothy Schmitt was a crewman on the BARBAROSSA, a fishing vessel participating in the opilio crab harvest in the Bering Sea. At about 11:00 on the night of February 9, 1991, the BARBAROSSA departed from St. George Island. Approximately two hours later, three vessels in the vicinity of St. George received a radio distress call saying "I'm going over!" [ER 176, tab 2]. This call was later attributed to the BARBAROSSA. There is no evidence as to which crew member gave the call. No trace of the BARBAROSSA or any of its six crew members has ever been found.
 
 
 4
 In the litigation that followed, Carolyn Jean moved for summary judgment claiming the estate had not established a genuine issue of material fact on whether Schmitt had endured pre-death pain and suffering. In opposition to the motion and to demonstrate post-injury consciousness, the estate presented affidavits and depositions of former BARBAROSSA crew members who stated that there was nothing on board the ship which could have broken away and knocked a crewman unconscious during a roll-over. The estate also produced deposition testimony of two expert witnesses who described the baneful physical and physiological effects of drowning.
 
 
 5
 The district court granted summary judgment stating:
 
 
 6
 The affidavits of the claimant's experts and the deposition[s] of [the crewmembers], without more evidence, do not create an inference to support a conclusion that the claimant was conscious for a period of time before his death.... Under the facts of this case, instantaneous death is as acceptable as any other theory.
 
 
 7
 [ER, tab 9 (Order at 8-9)].
 
 DISCUSSION
 
 8
 Before a decedent's beneficiary may recover for the decedent's pre-death pain and suffering, the beneficiary must show by a preponderance of the evidence "that the decedent was conscious for at least some period of time after he suffered the injuries which resulted in his death." Cook v. Ross Island Sand & Gravel Co., 626 F.2d 746, 749-50 (9th Cir.1980). Although eyewitness evidence of the decedent's consciousness is not essential, id. at 750, merely alleging pain and suffering is insufficient where the record supports a finding of almost instantaneous death, Magee v. Rose, 405 A.2d 143, 146 (Del.Super.1979); Deal v. A.P. Bell Fish Co., 728 F.2d 717, 718 (5th Cir.1984).
 
 
 9
 Determining whether a decedent experienced pre-death pain and suffering when there is no eyewitness to the death is a difficult task. Previous cases provide some guidance in deciding if the evidence is sufficient to survive a motion for summary judgment. But of course, the determination is always specific to the facts of each case.
 
 
 10
 Summary judgment usually has been granted if the evidence equally supports theories of instantaneous death, and pre-death pain and suffering. For example, in In re Complaint of Conn. Nat'l Bank, 733 F.Supp. 14 (S.D.N.Y.1990), vacated on other grounds, 928 F.2d 39 (2nd Cir.1991), a series of explosions, described as a rumbling sound followed by a "whoom", aboard a ship killed the decedent. The court denied recovery for pain and suffering because it was impossible to know whether the decedent died instantly, or was conscious for the short period of time between the rumbling sound and the whoom. Id. at 17. See also, Thompson v. Offshore Co., 440 F.Supp. 752 (S.D.Tex.1977) (finding inadequate proof of pain and suffering before deaths caused by collapsing oil platform because there was no evidence that the decedents consciously survived the impact of the fall into the water).
 
 
 11
 The estate cites Cook v. Ross Island Sand & Gravel Co. as precedent for this case. In Cook, an eyewitness testified that the decedent, Dennis Cook, fell into the Columbia River. However, the witness did not indicate whether Cook had been conscious either during the fall or immediately thereafter. Id. at 747. An autopsy established that Cook's death was caused by drowning. Id. At the trial, a forensic pathologist testified he found no evidence that Cook had suffered a skull fracture. This led the pathologist to conclude Cook had probably been conscious for up to two and one-half minutes after becoming submerged in the water. Id. at 748. We held that this testimony provided enough evidence for a jury to find that Cook was conscious during his asphyxiation.
 
 
 12
 Other courts have found eyewitness testimony about the nature of a fatal accident sufficient to permit an inference of pre-death pain and suffering even though no body was recovered. For example, in Snyder v. Whittaker Corp., 839 F.2d 1085 (5th Cir.1988), the Fifth Circuit found sufficient evidence to support a jury's verdict for the pre-death pain and suffering of seamen whose bodies were never found.
 
 
 13
 In Snyder, the two decedents were on a boat which struck an oil platform and sank. At trial, an eyewitness said he thought he saw a figure clinging to the hull of the boat. Expert testimony established that, under the weather conditions existing at the time of the accident, it was possible to survive in the water for eight to twenty hours. Id. at 1092. Although no bodies were found, the court stated a jury could infer the decedents struggled in the water for several hours before dying. Id. at 1092-93. Likewise, in United States Steel Corp. v. Lamp, 436 F.2d 1256 (6th Cir.1970), cert. denied, 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153 (1971), an inference of pre-death pain and suffering was allowed in a case where witnesses testified that the ship's collision was "soft." Some of the decedents were seen working below decks while water invaded the ship. Id. at 1275-76. Others were last observed on the deck or in lifeboats but presumably were hurled into the water as the ship capsized and sank. These facts, said the court, "give rise to the almost inescapable inference that those crewmen died by drowning, and nothing in those circumstances suggested that they were unaware of their fate." Id.; see also, McAleer v. Smith, 791 F.Supp. 923, 929 (D.R.I.1992) (possible to infer agonizing death by drowning where one decedent, whose body was never recovered after his ship sank, was last seen below decks).
 
 
 14
 Schmitt's estate provides less evidence of Schmitt's pre-death pain and suffering than was presented by the claimants in Cook, Snyder, or Lamp. Although a Mayday attributed to the BARBAROSSA was received, no eyewitness can testify to the cause of the vessel's loss. Furthermore, unlike the decedent in Cook, Schmitt's body was never recovered and therefore no autopsic evidence of his consciousness exists.
 
 
 15
 The case which best supports the estate's position is Zicherman v. Korean Air Lines Co., Ltd., 43 F.3d 18 (2nd Cir.1994). In Zicherman, the Second Circuit affirmed a jury's award for the pre-death pain and suffering of a passenger killed when a Korean Air Lines ("KAL") jet was shot down in Soviet airspace. At trial, the plaintiff used the testimony of two experts to support the claim of pre-death pain and suffering.
 
 
 16
 One of the plaintiff's experts, an aeronautical engineer, testified that the missiles probably blew a five foot hole in the rear fuselage, and that the plane remained airborne for twelve minutes thereafter. Id. at 20. The other expert, an aviation physiologist, explained the probable effects of rapid decompression on the passengers, and offered that the passengers had sufficient time to don their oxygen masks and remain conscious during the plane's descent. Id. at 20-21.
 
 
 17
 KAL argued this evidence was insufficient to prove pain and suffering. The court disagreed:
 
 
 18
 Eyewitness testimony as to the decedent's pain and suffering is not essential to recovery in fatal aircraft accidents, because such evidence "is difficult if not impossible to obtain." Obviously, it was impossible to produce such evidence in this case. Plaintiffs satisfied their burden by providing circumstantial evidence from which "it can be reasonably inferred that the passenger underwent some suffering before impact." A jury which accepted [the experts'] testimony could reasonably infer that [the decedent] remained conscious for a period of up to twelve minutes after the missile strike, during which time she experienced intense, compression-induced pain.
 
 
 19
 Id. at 23 (citations omitted).
 
 
 20
 In the case at hand, there is no eyewitness testimony concerning the fate of the BARBAROSSA. No bodies have been recovered, and no one can testify to the location or actions of the crewmen prior to the loss of the ship. Because of this, Carolyn Jean argues that the estate has failed to make a showing sufficient to establish the claim of pre-death pain and suffering, and therefore summary judgment is appropriate. See, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 21
 However, when viewed in favor of the estate (the nonmoving party), the evidence does support the claim of Schmitt's pre-death pain and suffering. The Mayday distress call attributed to the BARBAROSSA indicates that the ship rolled over--as opposed to meeting a more instantaneous end such as explosion. Moreover, the Mayday tends to prove that at least one member of the crew was conscious and aware of their peril. The former crewmembers' testimony that there was nothing on board which could break loose in the event of a roll-over makes it less likely that Schmitt was instantly knocked unconscious by the event. Finally, common experience tells us that even if Schmitt was asleep when the accident started to occur, the motion and/or the freezing cold water accompanying a capsizing ship could wake him before he drowned.
 
 
 22
 Because we conclude that Schmitt's estate has established a genuine issue of material fact on the question of whether Schmitt endured pre-death pain and suffering, we reverse the district court and remand the case for trial.
 
 
 23
 Reversed and Remanded.
 
 
 
 *
 Honorable William W Schwarzer, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 Schmitt also invites us to change the burden of proof so that the boat owner bears the burden of disproving pre-death pain and suffering when a vessel disappears and no bodies are recovered. We decline the invitation. To do otherwise would relieve a claimant from proving the existence of damages and constitute a significant deviation from the traditional notions of a prima facie case in tort