Bruce Edward COOK, Administrator of the Estate of Dennis Brian Cook, Plaintiff-Appellee,

v.

ROSS ISLAND SAND AND GRAVEL COMPANY, an Oregon Corporation, Defendant-Appellant.

No. 76–3625.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1979.

Decided Sept. 2, 1980.

Clayton Hess, Portland, Or., for defendant-appellant.

Thomas F. Mortimer, Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, HUG and PECK,* Circuit Judges.

JOHN W. PECK, Circuit Judge.

Plaintiff Bruce Edward Cook, administrator of the Estate of Dennis Brian Cook, filed a wrongful death action in the district court under the provisions of the Jones Act, 46 U.S.C. § 688, and in accordance with general maritime law. The action was instituted following the death of Dennis Cook, an employee of defendant Ross Island Sand and Gravel Company who had drowned in the Columbia River on January 24, 1974. The action proceeded to a jury trial, wherein defendant admitted liability for the decedent's death. Thus, the trial below dealt exclusively with the question of what damages, if any, defendant was obligated to pay. The jury, after hearing both eyewitness and expert testimony, returned a verdict in favor of plaintiff on two of the three elements of damage which plaintiff had claimed. The jury awarded $100,000 for the decedent's "conscious pain and suffering" and $75,000 for the "value of deprivation of [decedent's] comfort, care, aid and society." However, the jury did not award damages for the "deprivation of [decedent's] physical assistance" to his mother.[1] After the jury had returned its verdict, defendant moved the district court to enter a judgment n.o.v. The court denied defendant's motion, and instead issued *sua sponte* an order of remittitur. Therein, the court reduced the jury's award for "pain and suffering" from $100,000 to $35,000, as well as its award for "deprivation of comfort, care, aid and society" from $75,000 to $15,000. Plaintiff has accepted the court's order of remittitur; defendant nevertheless perfected the present appeal.

Defendant raises three basic issues, two of which relate to the court's award for pain and suffering. First, defendant argues that plaintiff was not entitled to damages for the decedent's pain and suffering of a mental nature. Second, and in the alternative, defendant argues that, even if damages for mental pain and suffering are properly compensable under maritime law, there was not sufficient evidence presented at trial to support the court's award of $35,000. Finally, defendant argues that, both under the provisions of the Jones Act and under the principles of general maritime law, a plaintiff is not entitled to damages for the deprivation of a decedent's "comfort, care, aid and society." We conclude that the arguments of defendant are without merit, and we affirm the district court's award both on the element of the decedent's conscious pain and suffering, as well as on the element of the loss of the decedent's comfort, care, aid and society.

## I. THE EVIDENCE

At the time of his death on January 24, 1974, the decedent Dennis Cook was employed by defendant Ross Island Sand and Gravel Company as a deckhand on one of the company's tugs and barges. On that date, according to the testimony of eyewitness Captain Robert Osborne, the decedent fell off the tug and barge and into the Columbia River. Although Captain Osborne testified as to the details of the decedent's fall, his testimony did not indicate whether the decedent had been conscious either during his fall, or immediately after he had entered the water. For example, Captain Osborne did not indicate that he had, at any time, heard the decedent cry for help.

The decedent's body was found approximately three months later. A short time thereafter, on May 17, 1974, Dr. Larry Newman, a forensic pathologist, performed an autopsy on the body. Dr. Newman testified at trial that the autopsy had established that the cause of the decedent's death had been asphyxia from drowning. Dr. Newman further testified that the au-

---

* The Honorable John W. Peck, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. Plaintiff sought to recover damages for the loss of the decedent's support of his mother. At trial, the decedent's mother testified that the decedent had assisted her in the operation and maintenance of·her motel.

topsy had produced no evidence that the decedent had sustained any skull fracture whatever. Based on the absence of such evidence, Dr. Newman concluded that the decedent had been conscious when he had entered the Columbia River, and that he had remained conscious for up to two and one-half minutes after he had become submerged in its water.

In addition to Dr. Newman, plaintiff called another medical expert, Dr. Barry Maletsky, a specialist in the fields of psychiatry and neurology, to describe for the jury the mental pain and suffering which the decedent had experienced. In his testimony, Dr. Maletsky detailed the severe emotional strain and anguish that a drowning person experiences in the moments immediately prior to his death. Further, Dr. Maletsky indicated that, in a death by drowning, the final moments of consciousness seem longer in duration to the drowning person who is struggling for his life.

## II. MENTAL PAIN AND SUFFERING

■ Defendant makes the general assertion that a decedent's mental pain and suffering is not a pecuniary loss that is compensable either under the provisions of the Jones Act or under the principles of general maritime law. We need not address this argument of defendant in the context of general maritime law, in light of the fact that a decedent's mental pain and suffering is a compensable injury under the provisions of the Jones Act.[2]

At the outset, we note that the pain and suffering of the decedent Dennis Cook did not result from an injury of a strictly men-

tal nature. Dr. Larry Newman, the pathologist who had performed the autopsy on the decedent's body, testified that the cause of the decedent's death had been asphyxia from drowning. Asphyxiation is a physical injury, and thus the evidence of record establishes that the alleged pain and anguish of the decedent Dennis Cook resulted from a physical injury.

Second, while we assume, for the sake of argument, that the Jones Act permits a decedent's beneficiaries to recover damages only for the "pecuniary losses" which they have sustained,[3] we note that the Act further permits these beneficiaries to recover damages for any loss or injury that was sustained by the decedent himself.

Section 688 of the Jones Act incorporates the death provisions of the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51–60. It has been held that, under the provisions of the FELA, a decedent's beneficiaries are able to recover, in relation to their personal damages, only those damages that are classified as pecuniary losses. *See, e.g., Michigan Central Railroad v. Vreeland,* 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913); *Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524 (5th Cir. 1980). According to the definition that has been given by the courts, pecuniary losses are limited to those losses that ". . . [may] be measured by any money standard." *American Railroad Company of Porto Rico v. Didricksen,* 227 U.S. 145, 150, 33 S.Ct. 224, 225, 57 L.Ed. 456 (1913). Thus, the loss of a decedent's support[4]—a pecuniary loss—is a damage that is compensable in an action under the Jones Act; however, the grief, bereavement, anx-

**2.** In *Moragne v. State Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Supreme Court first recognized an action for a seaman's wrongful death based on general federal maritime law. Such action may be premised on a notion of unseaworthiness, and is a separate and distinct cause of action from an action under the Jones Act.

**3.** In *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the Supreme Court expanded the compensable damages recoverable under general maritime law to include such non-pecuniary losses as the loss of a decedent's society. Recently, the Fifth and the First Circuit Courts of Appeals have

held that *Gaudet's* ruling as to general maritime law has not altered the established principle that recovery under the Jones Act is limited to the pecuniary losses that a decedent's beneficiaries have suffered. *See Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524 (5th Cir. 1979); *DoCarmo v. F. V. Pilgram I. Corp.,* 612 F.2d 11 (1st Cir. 1979). We need not reach this issue today, for the reasons stated in Section V of this opinion. *See* text, pp. 752–753, *infra.*

**4.** The loss of a decedent's support includes all the financial contributions that the decedent would have made to his dependents had he lived.

iety, distress or mental pain and suffering of a decedent's beneficiaries [5]—all non-pecuniary losses—are damages that are not compensable in such action. *Cf. Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 584–585, notes 11–17, 94 S.Ct. 806, 814–815, notes 11–17, 39 L.Ed.2d 9 (1974).

Yet, while the Jones Act arguably may apply a pecuniary loss restriction to the personal losses of a decedent's beneficiaries,[6] the Act does not apply a pecuniary loss restriction to the injuries of a decedent himself. On the contrary, a decedent's beneficiaries are able to recover damages for any type of injury or loss which the decedent sustained during the time that he was conscious prior to his death. Section 59 of the FELA, which is incorporated into the Jones Act, provides that "[a]ny right of action given by this chapter to a person suffering injury shall survive to his or her personal representative . . . ." Courts have never interpreted this provision to require the bifurcation of the conscious pain and suffering of a decedent or a claimant either into categories of "pecuniary loss" versus "nonpecuniary loss," or into categories of "physical injury" versus "mental or emotional injury." Rather, courts have interpreted the provision to allow a plaintiff to recover damages for all conscious pain and suffering of a decedent or a claimant, mental or otherwise, at least when such pain and suffering has been accompanied by an injury of a physical nature. *See, e.g., Gillespie v. United States Steel Corporation*, 379 U.S. 148, 156–158, 85 S.Ct. 308, 313–314, 13 L.Ed.2d 199 (1964); *Barger v. City of Baltimore*, 616 F.2d 730 (4th Cir. 1980) (emotional injury caused by loss of hearing compensable under the Jones Act); *Borras v. Sea-Land Service, Inc.*, 586 F.2d 881, 884–

886 (1st Cir. 1978) (in plaintiff's action under the Jones Act, liability of defendant for plaintiff's mental breakdown is a question for the jury); *Menard v. Penrod Drilling Co.*, 538 F.2d 1084, 1089 (5th Cir. 1976) (damages for plaintiff's impotency, as well as damages for his mental anguish and humiliation are recoverable under the Jones Act). *See generally,* 2 Benedict, *Admiralty* at 7–7 (7th ed., revised, 1979). As stated above, the mental pain and anguish that was experienced by the decedent Dennis Cook was accompanied by the physical injury that he experienced in the course of his asphyxiation.

This policy of allowing damages for a *decedent's* mental pain and anguish, but of excluding damages for the mental pain and anguish of a decedent's *beneficiaries* is a policy that is based on sound reasoning. In essence, the mental pain and suffering of a decedent's beneficiaries is the emotional response of the beneficiaries to ". . . the harrowing experience resulting from the death of a loved one." *Sea-Land Services, Inc. v. Gaudet, supra*, 414 U.S. at 585 n. 17, 94 S.Ct. at 815 n. 17. Such suffering, although often real and intense, is generally obscure and speculative from an evidentiary point of view. In contrast, the mental pain and anguish that is experienced by a decedent generally involves discernible factual elements (e.g., loss of hearing, asphyxiation, impotency), and thus a factfinder is able to make a reasonably accurate assessment of the injury which the decedent sustained.

## III. THE DECEDENT'S CONSCIOUSNESS/SUFFICIENCY OF THE EVIDENCE

■ As indicated above, in order for a decedent's beneficiaries to recover damages

---

**5.** The Supreme Court in *Sea-Land Services, Inc. v. Gaudet, supra,* was careful to note the distinction between the mental pain and anguish of a decedent's beneficiaries and the loss to the beneficiaries of a decedent's society. The Court wrote:

Loss of society must not be confused with mental anguish or grief, which is not compensable under the maritime wrongful-death remedy. The former entails the loss of positive benefits, while the latter represents an emotional response to the wrongful death.

414 U.S. at 585, n. 17, 94 S.Ct. at 815 n. 17. While in *Gaudet* the Court held that the mental pain and anguish of a decedent's beneficiaries is a non-pecuniary loss that is not compensable in a wrongful death action based on general maritime law, the Court also held that the loss of a decedent's society is a non-pecuniary loss that is properly compensable in such action.

**6.** *See* note 3, *infra.*

for a decedent's pain and suffering, it is necessary to establish that the decedent was conscious for at least some period of time after he suffered the injuries which resulted in his death. Defendant argues that there was not sufficient evidence presented at trial to establish that the decedent Dennis Cook was conscious either during his fall from the tug and barge, or after he had entered the Columbia River. We disagree.

In the appeal now before the Court, we are asked to review the district court's denial of defendant's motions for a directed verdict and for a judgment n.o.v. In reviewing this denial by the court, we apply a test of substantial evidence. *See Marquis v. Chrysler Corporation*, 577 F.2d 624, 631 (9th Cir. 1978). When we examine the evidence in the light most favorable to plaintiff, as we are required to do, we conclude that there was substantial evidence presented at trial to enable the jury to find that the decedent had been conscious for at least some period of time after he had entered the Columbia River. For example, Dr. Larry Newman, plaintiff's medical expert, testified that the autopsy of the decedent's body had not produced any evidence that the decedent had sustained a skull fracture. Based on the absence of such evidence, Dr. Newman concluded that the decedent had remained conscious for up to two and one-half minutes after he had become submerged in the water.

In deciding what weight we should accord this testimony of Dr. Newman, we find the Sixth Circuit opinion in *Petition of United States Steel Corporation*, 436 F.2d 1256, 1275–1276 (6th Cir.), *cert. denied*, 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153 (1970), to be instructive. Therein, several decedents had drowned when two ships had collided, and the evidence of record had established that the collision between the ships had been a "soft" one. The Sixth Circuit reasoned that this evidence ". . . permitt[ed] the . . . inference that it was unlikely that any of the

decedents would have been rendered unconscious prior to their final moments." 436 F.2d at 1276. The Court further reasoned that eyewitness evidence of the decedent's consciousness was not essential to an award for the decedents' pain and suffering. 436 F.2d at 1275. We agree with this position taken by the Sixth Circuit in *United States Steel Corporation*. Moreover, we find that the evidence of a lack of a skull fracture in the present case is comparable to the evidence of a "soft" collision in the *United States Steel* case. The testimony that the decedent Dennis Cook had not suffered a skull fracture enabled the jury to draw the inference that the decedent had been conscious during his asphyxiation. This inference shifted the burden of proof to defendant; however, defendant failed to come forward with any evidence in rebuttal. Accordingly, we now conclude that the testimony of Dr. Newman provided substantial evidence on which the jury could properly base a finding that the decedent had been conscious during the time that he was submerged in the water of the Columbia River. *Accord, Southern Pacific Company v. Heavingham*, 236 F.2d 406, 409 (9th Cir. 1956) ("[I]f the jury were of the view that [the decedent] probably suffocated from the steam, they would have the right to conclude that a man whose breath has been cut off nevertheless would remain conscious for an appreciable period of time").

## IV. THE LENGTH OF DECEDENT'S CONSCIOUSNESS

■ Next, defendant argues that, even if the decedent was conscious for some period of time after he had entered the Columbia River, his consciousness for a period of no more than two and one-half minutes [7] was not sufficiently long to support a damage award on the element of pain and suffering. Defendant cites as support the case of *St. Louis, Iron Mountain & Southern Railway v. Craft*, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1915). Therein, a railroad employee had been severely injured when a car had

---

**7.** Dr. Larry Newman, plaintiff's medical expert, testified that the decedent Dennis Cook could have maintained consciousness for between two to two and one-half minutes after he had become submerged in the water of the Columbia River.

passed over his body, breaking his legs and lacerating his abdomen. At trial, the plaintiff had presented evidence that the decedent had been conscious for approximately thirty minutes after he had sustained the injuries which had resulted in his death. Although the Supreme Court upheld the award for the decedent's pain and suffering, the Court noted that the thirty minute period in which the decedent had been conscious had been almost "substantially contemporaneous" with his death. The Court termed the case one that was "close to the borderline." 237 U.S. at 655, 35 S.Ct. at 705. The holding of the Court in the *Craft* case was cited with approval one year later in the case of *Great Northern Railroad v. Capital Trust Co.,* 242 U.S. 144, 37 S.Ct. 41, 61 L.Ed. 208 (1916). Therein, the Court held that there was no basis for an award for a decedent's pain and suffering, despite the fact that the decedent, a railroad employee, had allegedly lived for ten minutes after he had sustained severe physical injuries. The Court wrote:

> In *St. Louis & Iron Mountain Ry. v. Craft,* 237 U.S. 648, 655, 658 [35 S.Ct. 704, 705, 706, 59 L.Ed. 1160] (June 1, 1915), we held that under the Employers' Liability Act, as amended in 1910, the administrator of a fatally injured employe might recover the beneficiary's pecuniary loss and also for pain and suffering endured by deceased between the moment of injury and final dissolution. We were careful, however, to say—(655) "But to avoid any misapprehension it is well to observe that the case is close to the border line, for such pain and suffering as are substantially contemporaneous with death or mere incidents to it, as also the short periods of insensibility which sometimes intervene between fatal injuries and death, afford no basis for a separate estimation or award of damages under statutes like that which is controlling here."

242 U.S. at 147, 37 S.Ct. at 42. *See also The Corsair,* 145 U.S. 335, 348, 12 S.Ct. 949, 953, 36 L.Ed. 727 (1891) ("[T]here is no averment from which we can gather that these pains and sufferings [from drowning] were not substantially contemporaneous with [the decedent's] death and inseparable as a matter of law from it. [Citations omitted.] * * [T]he very fact that [the decedent] died by drowning indicates that her sufferings must have been brief, and, in law, a mere incident to her death. Her fright for a few minutes is too unsubstantial a basis for a separate estimation of damages").

However, we note that in the sixty to seventy years that have passed since the Supreme Court decided the cases of *Craft* and *Capital Trust,* the Court has adopted a more flexible approach to the length of consciousness that is required to support an award for a decedent's pain and suffering. For example, the Court has placed the question of a decedent's consciousness squarely within the province of the jury. *See* cases cited in *Heavingham, supra,* 236 F.2d at 409. *See also, e.g., Gillespie v. United States Steel Corporation,* 379 U.S. 148, 157–158, 85 S.Ct. 308, 313–314, 13 L.Ed.2d 199 (1964).

Further, we reject defendant's reasoning that, inasmuch as a thirty minute period of consciousness was "close to the borderline" in the *Craft* case, the two and one-half minute period of consciousness in the present case cannot possibly support an award on the element of pain and suffering. This Court will not adopt a "stop watch" approach to the question of whether a decedent remained conscious for a legally substantial period of time after he sustained the injuries that eventually resulted in his death. Rather, this Court will approach the question of a decedent's consciousness only after a careful examination of the facts of each individual case. In footnote one of the *Craft* decision, the Supreme Court instructed that if a decedent remains conscious for an "appreciable period of time" after his injury, a jury can properly return an award based on the decedent's pain and suffering. What constitutes an "appreciable period of time" will vary. depending on the circumstances of each case. In some cases, ten minutes may not prove to be a sufficient period of consciousness. *See, e.q., Great Northern Railroad Co. v. Capital Trust Co., supra.* In other cases, one minute may

prove to be adequate. *See, e.g., Petition of United States Steel Corporation, supra; Southern Pacific Company v. Heavingham, supra.*

In the case now before us, Dr. Maletsky, an expert in the fields of psychiatry and neurology, testified that the moments immediately prior to a death by drowning seem longer in duration to the person who is struggling for his life. This period of heightened awareness that was experienced by the decedent Dennis Cook distinguishes the present case from the cases of *Craft, supra,* and *Capital Trust, supra.* In those cases, the Supreme Court examined violent deaths that resulted from sudden and severe physical injuries. Therein, the Court described the periods of consciousness as ". . . short periods of *insensibility* which sometimes intervene between fatal injuries and death." *Great Northern Railroad v. Capital Trust Co., supra,* 242 U.S. at 147, 37 S.Ct. at 42, *quoting, St. Louis, Iron Mountain & Southern Railway v. Craft, supra,* 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (emphasis added). The periods of insensibility which were considered by the Court in *Craft* and *Capital Trust* differ significantly from the period of consciousness that was described to the jury by Dr. Maletsky.

In summary, we conclude that the two and one-half minute period of consciousness of the decedent Dennis Cook was sufficient to support a jury award on the element of pain and suffering. Although we acknowledge that the period of the decedent's consciousness was brief, we also note that the district court took this factor into consideration when it reduced the jury's award for pain and suffering from $100,000 to $35,000.

## V. LOSS OF SOCIETY

As discussed above, the loss of a decedent's support is a pecuniary loss that is compensable both in an action for negligence under the Jones Act, as well as in an action for unseaworthiness under the principles of general maritime law. Also as discussed above, the mental pain and anguish of a decedent's beneficiaries is a non-pecuniary loss that is not compensable in either of these actions. *See Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 584–585, 94 S.Ct. at 814 (1974). While these rules of law are settled, there is presently a dispute as to whether the loss of a decedent's society is a compensable injury in a death action under the provisions of the Jones Act.

When the Supreme Court first recognized in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), that an independent cause of action existed under general maritime law for a seaman's wrongful death, the Court left open the issue of what damages were available under the new cause of action.[8] However, in a subsequent case, *Sea-Land Services, Inc. v. Gaudet, supra,* the Court concluded that non-pecuniary losses such as the loss of a decedent's society were properly compensable in accordance with general maritime law, as set out in the *Moragne* case. In the wake of *Moragne* and *Gaudet,* two Circuit Courts of Appeals have considered whether the recoveries that are available under the Jones Act have been expanded by the recoveries that the Supreme Court has recently made available under general maritime law. Both of these Circuits have concluded that *Moragne* and *Gaudet* have not altered the established principle of recovery under the Jones Act, that is, that a beneficiaries' non-pecuniary losses such as loss of society are non-compensable in a Jones Act case. *See Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524 (5th Cir. 1979) (en banc); *DoCarmo v. F. V. Pilgram I. Corp.,* 612 F.2d 11 (1st Cir. 1979). *Contra, Ivy v. Security Barge Lines, Inc.*

---

8. The Supreme Court in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), recognized for the first time a cause of action for wrongful death that was based on general federal maritime law. Prior to that time, if a fatal accident occurred within territorial waters, a plaintiff was forced to resort to one of a number of often conflicting state wrongful death statutes. *Moragne* attempted to introduce a degree of uniformity into this area of law through the introduction of a new cause of action based on federal maritime law.

*supra* (dissenting opinions of Brown, Ch. J. and Kravitch, J.). This Court need not address at this time the question of what damages are now available under the Jones Act, in light of the fact that plaintiff's complaint, to which defendant admitted liability, alleged both a claim for negligence under the Jones Act, as well as a claim for unseaworthiness in accordance with general maritime law. Based on the allegation of unseaworthiness, plaintiff was entitled to recover damages for the loss of the decedent's society, pursuant to the principles of general maritime law set forth in *Moragne* and *Gaudet.*

## VI. CONCLUSION

We conclude (a) that the mental pain and suffering of a decedent is a compensable injury in a wrongful death action under the Jones Act, at least when such pain and suffering is accompanied by an injury of a physical nature; (b) that, in the absence of conflicting evidence, evidence of a lack of skull fracture is sufficient to permit the inference that a decedent experienced conscious pain and suffering during his death by drowning; (c) that a two and one-half minute period of consciousness is of sufficient length to permit a jury to return a verdict on the element of pain and suffering; and (d) that the loss of a decedent's society is a compensable injury in an action for unseaworthiness under general maritime law.

We have considered all of the arguments that have been raised by defendant, and we conclude that these arguments are without merit. Accordingly, the judgment of the district court is affirmed.