113 F.3d 1050
 1997 A.M.C. 1936, 37 Fed.R.Serv.3d 1001,
97 Cal. Daily Op. Serv. 3567,
97 Daily Journal D.A.R. 6113
 Erica Kaur GHOTRA, minor, by Susan GHOTRA her guardian ad
litem; Ravinder Singh Ghotra, minor, by Susan Ghotra, his
guardian ad litem; Susan Ghotra, an individual, and as
administratrix of the Estate of Kuldip S. Ghotra; Amolak
Singh Ghotra; and Sarjit Kaur Ghotra, Plaintiffs-Appellants,
v.
BANDILA SHIPPING, INC.; "M/V Gracious", her Engines,
Tackle, Apparel, Furniture and Appurtenances, in
rem. Defendants-Appellees,
v.
PALM MARITIME, S.A., Defendant.
 No. 93-56326.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1996.
Decided May 13, 1997.
 
 1
 Michael W. Lodwick, Fisher & Porter, Long Beach, California, for plaintiffs-appellants Erica Kaur Ghotra and Ravinder Singh Ghotra, Minors, by Susan Ghotra, Their Guardian Ad Litem; Susan Ghotra; Susan Ghotra, as Administrator of the Estate of Kuldip S. Ghotra.
 
 
 2
 Dennis M. Elber, Stolpman, Krissman, Elber, Mandel & Katzman, Long Beach, California, for plaintiffs-appellants Amolak Singh Ghotra and Sarjit Kaur Ghotra.
 
 
 3
 Albert E. Peacock III, Robert D. Feighner, Lisa K. Donahue, Keesal, Young & Logan, Long Beach, California, for defendants-appellees.
 
 
 4
 Appeal from the United States District Court for the Central District of California, Ronald S.W. Lew, District Judge, Presiding. D.C. No. CV-91-5469-RSWL.
 
 
 5
 Before: PREGERSON, T.G. NELSON, Circuit Judges, and EZRA,* District Judge.
 
 OPINION
 
 6
 DAVID ALAN EZRA, District Judge.
 
 
 7
 We decide whether the family of a marine surveyor who died from injuries incurred aboard the M/V Gracious was entitled to a jury trial on the claims brought under the court's diversity jurisdiction, whether they may recover under state law for wrongful death, whether the decedent was owed a higher standard of care than the district court applied, and whether the family was entitled to recover for predeath pain and suffering. For the foregoing reasons, we reverse in part, affirm in part, and remand.
 
 I.
 
 8
 In September 1991, charterer Kawasaki Kisen Kaisha ("K-Line") through its local agent Kerr Steamship Company ("Kerr") hired Captain Kuldip S. Ghotra ("Captain Ghotra"), a marine surveyor, to coordinate and inspect the progress of the hold cleaning work being done by Mesa Services ("Mesa") aboard the M/V Gracious. On September 30, 1991, Captain Ghotra boarded the M/V Gracious to inspect the cleaning and painting of Hold No. 3. In the presence of Mesa supervisor Ricardo Cervantes ("Cervantes"), Captain Ghotra twice told Chief Mate Roberto Guzman ("Guzman") to go open the forward hatch cover and then return to the port side of Hold No. 3, where they were standing. Before Guzman returned, Captain Ghotra and Cervantes boarded a manlift/cherry-picker and began inspecting Hold No. 3. The opening hatch cover became entangled with the manlift basket and broke the safety bar around the basket. Captain Ghotra and the basket fell to the bottom of the hold. Captain Ghotra suffered massive internal injuries and died shortly thereafter on the ship. Captain Ghotra's minor children, widow, estate and parents ("Appellants" or "the Ghotras") thereafter brought the instant action against the M/V Gracious, its owner, Bandila Shipping Inc. ("Bandila"), and the charterer K-Line.
 
 
 9
 In their original complaint filed on October 8, 1991, the Ghotras asserted three causes of action (wrongful death, common law negligence, and breach of warranties) against Bandila and K-Line under the court's diversity jurisdiction and an in rem claim against the M/V Gracious under the court's admiralty jurisdiction. Upon Bandila's motion, the district court struck the Ghotras' wrongful death and breach of warranties claims and gave the Ghotras leave to amend their Complaint, which they did twice. In their Second Amended Complaint, the Ghotras alleged common law negligence, gross negligence, and negligence under section 905(b) of the Longshore & Harbor Workers' Compensation Act ("LHWCA") against Bandila and K-Line pursuant to the court's diversity jurisdiction, with a corresponding demand for jury trial, and reiterated the in rem claim against the M/V Gracious. The Ghotras also filed a separate suit alleging common law negligence and gross negligence under the court's diversity jurisdiction against Palm Maritime S.A. ("Palm") as owner of the M/V Gracious; this action was consolidated for trial with the action against K-Line and Bandila.
 
 
 10
 In pretrial motions by Bandila, Palm and the M/V Gracious,[1] (collectively the "Vessel Interests"), the district court held that the Ghotras (a) were not entitled to recover for Captain Ghotra's predeath pain and suffering, and (b) were not entitled to trial by jury for the claims brought under the court's diversity jurisdiction. The district court subsequently conducted a three-day bench trial and awarded judgment to the Vessel Interests. The district court held that Bandila and Palm were not negligent, after finding that under the circumstances, the Vessel Interests only owed Captain Ghotra a low degree of care. The court entered judgment on August 26, 1993, dismissing the Second Amended Complaint with prejudice and awarding costs to Bandila and Palm. The Ghotras filed notice of appeal on September 15, 1993.
 
 
 11
 The following issues were presented to this court on appeal: (1) whether the district court committed constitutional and legal error in denying the Ghotras the right to a jury trial for claims brought under the court's diversity jurisdiction; (2) whether the district court erred in ruling that federal maritime law preempts California law in a wrongful death action arising within the navigable waters of the United States; (3) whether the district court committed reversible error in holding the Vessel Interests to a lower standard of care; and (4) whether the district court erred in granting summary judgment on the Ghotras' claim for post-accident, predeath pain and suffering based on Ninth Circuit law and facts presented to the court.
 
 
 12
 After oral argument, this court remanded the case to the district court for further consideration in light of the United States Supreme Court's recent decision in Yamaha Motor Corp. v. Calhoun, --- U.S. ----, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), with the instruction to pay particular attention to the question of whether Captain Ghotra was a seafarer within the meaning of the LHWCA at the time of his death.
 
 
 13
 The district court, after considering the Supreme Court's decision in Yamaha, the briefs filed, and the arguments of counsel, concluded that Captain Ghotra was a seafarer for purposes of the LHWCA and that therefore state law wrongful death remedies were preempted by federal maritime law. The parties requested permission to file supplemental briefing on the subject, which this court granted.
 
 II.
 
 14
 Questions of law are reviewed de novo. Anderson v. United States, 966 F.2d 487, 489 (9th Cir.1992). The granting of summary judgment is also reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c); viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. Warren, 58 F.3d at 441; Jesinger, 24 F.3d at 1130.
 
 III.
 
 15
 The district court struck the Ghotras' jury demand based on its findings that (a) because federal maritime law regarding wrongful death preempted state law, there was no state law cause of action and thus no right to trial by jury, and (b) because the Ghotras expressly sought remedies under general federal maritime law in all four causes of action, the Ghotras had no claim cognizable in the court's general civil jurisdiction.
 
 
 16
 Under Federal Rule of Civil Procedure 9(h), "[a] pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim...." The Ghotras clearly stated that their first, second, and fourth causes of action were predicated on diversity jurisdiction, not admiralty. They also specifically made a jury trial demand for each of these three claims. The third claim is an in rem claim against the vessel, and the Ghotras attempted to secure a jury trial for this claim as well by requesting that the court exercise pendent jurisdiction over the claim.
 
 
 17
 28 U.S.C. § 1333(1) provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." The latter clause, known as the "savings to suitors" clause, "leave[s] state courts 'competent' to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation." Madruga v. Superior Court of California, 346 U.S. 556, 560-61, 74 S.Ct. 298, 301, 98 L.Ed. 290 (1954). The savings to suitors clause also permits the plaintiff to bring an action "at law" in the federal district court, provided the requirements of diversity of citizenship and amount in controversy are met. In re Chimenti, 79 F.3d 534, 537 (6th Cir.1996) (quoting 14 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3672, at 431-33 (1985)).
 
 
 18
 Therefore, a plaintiff with in personam maritime claims has three choices: He may file suit in federal court under the federal court's admiralty jurisdiction, in federal court under diversity jurisdiction if the parties are diverse and the amount in controversy is satisfied, or in state court. The difference between these choices is mostly procedural; of greatest significance is that there is no right to jury trial if general admiralty jurisdiction is invoked, while it is preserved for claims based in diversity or brought in state court. Fed.R.Civ.P. 38;[2] see In re Air Disaster Near Honolulu, Hawaii, 792 F.Supp. 1541, 1546 (N.D.Cal.1990) (citations omitted). The same substantive law pertains to the claim regardless of the forum, a type of "reverse-Erie" to ensure the uniform application of admiralty law. Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 384, 38 S.Ct. 501, 503-04, 62 L.Ed. 1171 (1918).
 
 
 19
 Therefore, the district court mischaracterized the issue before it. It appears that the district court believed that because general admiralty law would be the substantive law applied to the claims, the Ghotras had no claim cognizable in the court's general civil jurisdiction and no claim which would give rise to a jury trial. In essence, the district court required the Ghotras to specify the common law basis for their claims before they could proceed with a jury.[3] This view overlooks the fact that common law courts traditionally exercised concurrent jurisdiction over maritime cases. See Linton v. Great Lakes Dredge & Dock Co., 964 F.2d 1480, 1485 (5th Cir.1992), cert. denied, 506 U.S. 975, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992) (citing Thomas J. Schoenbaum, Admiralty and Maritime Law § 3-13 n. 2 (1987) (policy basis for concurrent jurisdiction is that "the common law courts had the power to hear such cases prior to the adoption of the Constitution")). Instead, the proper focus is on whether the suit could have been brought at "common law," that is, whether the court had an independent basis for jurisdiction and whether this was the type of claim that historically could be brought in state court or on the law side of the district court. See Wilmington Trust v. United States Dist. Ct., 934 F.2d 1026, 1029 (9th Cir.1991) ("Many claims, however, are cognizable by the district courts whether asserted in admiralty or in a civil action, assuming the existence of a nonmaritime ground of jurisdiction. Thus at present the pleader has power to determine procedural consequences by the way in which he exercises the classic privilege given by the saving-to-suitors clause." (quoting Fed.R.Civ.P. 9(h) advisory committee's notes to 1966 amendment)), cert. denied, 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992); Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir.1987) (where plaintiff has independent basis of jurisdiction for his maritime claims, claims are not "cognizable only in admiralty" and plaintiff's "election to invoke jurisdiction on the 'law side' of the court (as opposed to the 'admiralty side,') therefore, precludes [the court from] treating his maritime claims as admiralty claims ...." (internal citations omitted)); see also Linton, 964 F.2d at 1484, n. 7 (naming several maritime remedies not available in an action "at law": in rem actions, actions for limitations of liability, and other remedies excluded from "law" by express statutory provision).
 
 
 20
 The Ghotras' first, second, and fourth causes of action, alleging negligence, gross negligence, and negligence under section 905(b) of the LHWCA, are in personam maritime claims that could have been brought "at common law." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 88-89, 66 S.Ct. 872, 874-75, 90 L.Ed. 1099 (1946) (negligence); G. Gilmore & C. Black, The Law of Admiralty 450 (2d ed. 1975) (section 905(b) embraces in personam claims as well as in rem claims). Diversity jurisdiction existed and was asserted by the Ghotras as the jurisdictional basis for these claims. Therefore, we find the Ghotras were entitled to a jury trial on those claims. See Craig v. Atlantic Richfield Co., 19 F.3d 472, 476 (9th Cir.) ("where a federal court has an independent basis of jurisdiction over cases involving admiralty claims, such as diversity of citizenship, both the defendant and plaintiff have a right to demand a jury trial under the Seventh Amendment so long as the suit is one that could traditionally have been brought 'at common law.' "), cert. denied, 513 U.S. 875, 115 S.Ct. 203, 130 L.Ed.2d 133 (1994); Wilmington Trust, 934 F.2d at 1029 ("The 'savings-to-suitors' clause establishes the right of a party to choose whether to proceed within the court's admiralty jurisdiction or general civil jurisdiction when both admiralty and non-admiralty federal jurisdiction exist.").
 
 
 21
 Even though we find that the district court struck the Ghotras' demand for a jury trial on an erroneous basis, the question remains whether the assertion of an in rem claim in the same complaint with the diversity claims serves to preclude the right to jury trial. We conclude that it does not.
 
 
 22
 The Seventh Amendment guarantees a jury trial in cases at common law.[4] In admiralty cases, however, the Seventh Amendment neither requires jury trials nor forbids them. Fitzgerald v. United States Lines Co., 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963). In Fitzgerald, the Supreme Court held that where the complaint alleged a Jones Act claim, with the accompanying statutory right to jury trial, and a maintenance and cure claim, a traditional admiralty remedy, both issues were to be tried by jury. Id. at 21, 83 S.Ct. at 1650-51. The Supreme Court premised this decision on a finding that it had the power and responsibility to fashion rules of admiralty. Id. at 20, 83 S.Ct. at 1650. Because the separation of the action into trial by jury for the Jones Act claim and bench trial for the maintenance and cure claim resulted in a cumbersome, confusing, and time consuming process, the exercise of such power was proper when both claims arose out of the same set of facts. Id. at 21, 83 S.Ct. at 1650. The Court concluded that "[o]nly one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of procedural developments." Id.
 
 
 23
 Applying the same reasoning to facts similar to the instant case, the Fourth Circuit concluded that where the plaintiff sued one defendant at law under diversity jurisdiction and the other defendant in admiralty because diversity did not exist between the plaintiff and that defendant, a jury trial on all claims was proper. Vodusek v. Bayliner Marine Corp., 71 F.3d 148 (4th Cir.1995). The defendant argued that because complete diversity did not exist, there was no jurisdictional basis for the claims brought "at law," and therefore, no right to jury trial at all. Id. at 152. The Fourth Circuit rejected this argument as failing to recognize that the federal courts are enabled by the Federal Rules to exercise their power in the three historically separate departments within a single case. Id. at 154. Reasoning that if the plaintiff had filed separate suits, she would have had a jurisdictional basis to proceed with each, the court concluded that the fact that both were combined into one suit did not destroy the existence of diversity jurisdiction. Id. at 154.
 
 
 24
 Moreover, because all the claims arose from the same accident and the same resulting injuries, the court determined that the same considerations underlying Fitzgerald were present; submitting both claims to the jury would ensure that neither duplicative nor inadequate damages were awarded and would avoid the problem of applying principles of collateral estoppel. Id. at 153-54. The Fourth Circuit concluded that not only was the plaintiff entitled to jury trial on the claims brought under the court's diversity jurisdiction, but also that the entire case was properly submitted to the jury. Id.
 
 
 25
 In contrast, the Fifth Circuit has steadfastly restricted the use of a jury trial on claims brought under diversity jurisdiction where combined with in rem admiralty claims. In Powell v. Offshore Navigation, Inc., 644 F.2d 1063 (5th Cir.), cert. denied, 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981), the plaintiff combined admiralty claims against a non-diverse defendant and the vessel with savings-clause claims supported by diversity jurisdiction over other defendants. Fearing "the abolition of the complete diversity requirement in maritime cases" and an unwarranted expansion of the use of jury trial in maritime cases, the Fifth Circuit concluded that the plaintiff was not entitled to a jury trial. Id. at 1069.
 
 
 26
 Thereafter, in T.N.T. Marine Serv. v. Weaver Shipyards, 702 F.2d 585, 588 (5th Cir.), cert. denied, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983), the Fifth Circuit held that the plaintiff had no right to a jury where he alleged both in personam and in rem claims. In addition to alleging diversity jurisdiction, the plaintiff's complaint contained a statement that "this is also a suit for breach of maritime contract and for maritime tort." Id. at 587. Although the plaintiff made no formal 9(h) election, the court concluded that the plaintiff elected to bring the entire suit in admiralty based on the statement in his pleading and the fact that he alleged a claim against the vessel in rem. Id. at 587-88. As such, he had no right to a jury. Id. at 588.
 
 
 27
 The Fifth Circuit has interpreted T.N.T. Marine to hold that where a plaintiff asserts both admiralty and diversity jurisdiction in the same complaint, it constitutes an election to proceed in admiralty alone without a jury. See Durden v. Exxon Corp., 803 F.2d 845 (5th Cir.1986); Gilmore v. Waterman Steamship Corp., 790 F.2d 1244, 1246 (5th Cir.1986); Truehart v. Blandon, 685 F.Supp. 956, 959-60 (E.D.La.1988).
 
 
 28
 We reject such a restrictive perspective. The Fifth Circuit's reasoning unnecessarily constrains the flexibility created by the unification of the historically separate departments of "law" and admiralty by the Federal Rules of Civil Procedure in 1966. Moreover, the Ninth Circuit has previously recognized that "the non-jury component of admiralty jurisdiction must give way to the seventh amendment" and "that the liberal joinder rules permit 'legal and equitable causes to be brought and resolved in one civil action' and preserve any statutory or constitutional right to a jury trial." Wilmington Trust, 934 F.2d at 1031. In Wilmington Trust, we held that the plaintiff's election to proceed in admiralty did not deprive the defendant of the right to jury trial on joined counterclaims and noted that such a holding "may result in an entire case being tried before a jury. This result is likely to occur if all claims are closely related factually." Id. at 1032 (citing Fitzgerald, 374 U.S. at 21, 83 S.Ct. at 1650-51).
 
 
 29
 The Ghotras invoked the jurisdiction of two historically separate departments in a single action, combining claims at law under diversity jurisdiction with an in rem claim under admiralty jurisdiction. Under the Seventh Amendment, the Ghotras were entitled to a jury trial on the claims brought under the court's diversity jurisdiction. We find nothing inherently incongruous about bringing an in rem and an in personam claim together before the jury when the claims arise out of a single occurrence. Although the right to jury trial in the instant case derives from the savings to suitors clause rather than a statutory grant such as the Jones Act, the reasoning of Fitzgerald is equally persuasive and justifies a jury trial over all four claims, where the in rem claim arises out of the same factual circumstances as the other three claims. Contrary to the Vessel Interests' argument, such a holding would not "completely eliminate the election required under F.R.C.P. Rule 9(h)" or "nullify F.R.C.P. Rule 38(e) in all maritime cases in which a separate basis for subject matter jurisdiction could be articulated." Appellee's Brief at 21-22.
 
 
 30
 In light of the fact that the Ghotras could have brought two separate actions, one consisting of the in personam claims brought under diversity and one consisting solely of the in rem claim, which could then have been consolidated into one action under Federal Rule of Civil Procedure 42(a),[5] we find no reason to penalize the Ghotras by ruling that the decision to combine the two into one single action constituted an election to proceed in admiralty alone without the right to jury trial. Such a holding would run contrary to the intent of the Federal Rules of Civil Procedure and result in a waste of judicial resources and duplication of testimony in parallel actions. Furthermore, because the Federal Rules contain provisions designed to prevent artificially constructed diversity actions that do not contain all necessary parties, we have not "opened the floodgates" to allow jury trials in all maritime cases. See Fed.R.Civ.P. 19. Finally, the Ghotras clearly asserted diversity as the jurisdictional basis for the in personam claims in each of their Complaints. This is not a case where the Ghotras changed their mind as to the jurisdictional basis in the midst of litigation. Nor is it a case where the Ghotras utilized the advantages of in rem procedures then turned around to use the same claim as the basis for diversity jurisdiction. See Jose v. M/V Fir Grove, 765 F.Supp. 1037, 1039 (D.Or.1991). We conclude therefore that the Ghotras were entitled to a jury trial on their entire action.
 
 
 31
 The Vessel Interests maintain that any error resulting from striking the jury demand was harmless, as the district court was not required to resolve any factual disputes. The Vessel Interests contend that the facts were uncontroverted, and therefore this court should consider the matter as one for summary judgment. Considering, however, that the matter proceeded to trial and that negligence claims are generally not disposed of on summary judgment, we do not consider the matter as one for summary judgment and instead REMAND the case to the district court for a new trial consistent with this opinion. We address the remaining issues, however, to provide guidance to the district court on remand.
 
 IV.
 
 32
 The district court ruled that federal maritime law preempts California law in a wrongful death action arising within navigable waters of the United States. The Vessel Interests argued, and the district court agreed, that Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) and its progeny in the Ninth Circuit stand for the proposition that federal maritime law preempts state wrongful death statutes. See Evich v. Morris, 819 F.2d 256, 257-58 (9th Cir.), cert. denied, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987); Nygaard v. Peter Pan Seafoods, 701 F.2d 77 (9th Cir.1983); Nelson v. United States, 639 F.2d 469 (9th Cir.1980). The Ghotras argued that Moragne added the availability of a remedy under general maritime law and that Moragne did not terminate the application of comparable state wrongful death statutes for deaths occurring in territorial waters.
 
 
 33
 During the pendency of this appeal, the Supreme Court decided Yamaha Motor Corp. v. Calhoun, --- U.S. ----, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), which held that Moragne does not preempt application of the state wrongful death remedies in accident cases where the decedent is not "a seaman, longshore worker, or person otherwise engaged in a maritime trade." Accordingly, we remanded the case to the district court for the limited purpose of determining whether Captain Ghotra was a seafarer within the meaning of the Longshore and Harbor Worker's Compensation Act.
 
 
 34
 Upon remand, the district court interpreted Yamaha as guided by several factors: an interest in providing adequate and uniform remedies for seamen, longshoremen, harbor workers and others engaged in maritime trade, an observation that Congress had already provided wrongful death remedies to maritime workers, and a recognition that the spirit of Moragne had been to expand remedies rather than contract them. The district court further understood Yamaha to be based upon the fact that the decedent, a twelve-year-old girl killed in a jet ski accident, was not covered by any comprehensive statutory scheme and that the interests in uniformity guiding Moragne were not operative to her set of facts.
 
 
 35
 Applying the reasoning of Yamaha, the district court distilled the issue to whether Captain Ghotra was a "seafarer" or "nonseafarer" as the terms were used by the Supreme Court. Because the parties agreed that Captain Ghotra was not a seaman for purpose of the Jones Act, the district court evaluated Captain Ghotra's status solely by reference to the LHWCA. After recognizing that the LHWCA defines an employee as "any person engaged in maritime employment" and provides an injured maritime worker with two remedies, one against his employer and one against third party vessel owners, the district court concluded that Captain Ghotra was a seafarer within the meaning of the LHWCA. In so holding, the district court rejected the Ghotras' argument that Captain Ghotra's self-employed status places him outside the scope of the LHWCA. The district court additionally noted in further support for this conclusion that Captain Ghotra satisfied the traditional "status" and "situs" test and reasoned that he should be treated similarly to other marine surveyors and workers.
 
 
 36
 We then gave the parties leave to file supplemental briefing regarding the district court's decision on remand. The Ghotras contend that the district court erred in finding Captain Ghotra a "seafarer" within the meaning of the LHWCA because the LHWCA does not apply to self-employed persons.
 
 
 37
 The Vessel Interests maintain that the district court was correct in finding Captain Ghotra a seafarer based on a comparison of the circumstances in Yamaha and in the instant case. Specifically, the Vessel Interests note that Captain Ghotra was a marine surveyor, hired by a shipping company to inspect cargo holds and killed while performing these duties, as opposed to a child on vacation killed while riding a rented recreational jet ski. The Vessel Interests maintain that the interest in uniform application of maritime remedies is paramount because LHWCA § 905(b) provides the exclusive remedy for his death. Moreover, the Vessel Interests argue that it is irrelevant that Captain Ghotra is self-employed and cannot make a claim against an "employer" under § 905(a) because the LHWCA does not exempt out self-employed contractors, because he could make a claim against the vessel under § 905(b), and because the LHWCA does not set forth a minimum number of employees or require that the employer and employee be separate entities. They conclude that the combination of these two sections makes the LHWCA a "comprehensive tort recovery regime" within the meaning of Yamaha, and therefore state remedies are inappropriate.
 
 
 38
 We agree with the district court. "Congress' specific aim when it enacted the original version of the LHWCA in 1927 was 'to fill the void created by the inability of the States to remedy injuries on navigable waters.' ... A central purpose underlying the LHWCA was thus to create 'a uniform compensation system' ..." Kollias v. D & G Marine Maintenance, 29 F.3d 67, 74 (2nd Cir.1994), cert. denied, 513 U.S. 1146, 115 S.Ct. 1092, 130 L.Ed.2d 1061 (1995) (citations omitted). The Ghotras urge this court to treat Captain Ghotra differently from other marine surveyors on the basis that Captain Ghotra is self-employed.
 
 
 39
 Indisputably, Captain Ghotra satisfied the status and situs test for coverage under the LHWCA; he was killed on a vessel on navigable waters while engaged in traditional maritime employment. See Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 265, 97 S.Ct. 2348, 2357-58, 53 L.Ed.2d 320 (1977). To treat him differently because he was self-employed would contradict the overall goal of uniformity among workers doing the same type of work and would promote unpredictability among vessel owners, charterers, and others who do not directly hire marine workers, but may ultimately be liable to those injured in maritime employment. See Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1137 (5th Cir.1995) ("Uniformity and predictability are important in admiralty.")
 
 
 40
 Moreover, Captain Ghotra falls within the LHWCA's literal definition of "employee." An "employee" is defined as "any person engaged in maritime employment, ..." 33 U.S.C. § 902(3). The definition does not include any requirement that the employee be employed by a separate "employer" entity. The Ghotras rely upon Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) to require a "master-servant" relationship for coverage under the LHWCA. However, Crowell and the other cases cited by the Ghotras address recovery against an employer pursuant to the LHWCA's remedial scheme. We do not disagree that the requirement of a "master-servant" relationship may be necessary to justify liability without fault against a putative employer. However, the fact that Captain Ghotra is unable to recover against an employer under the instant circumstances does not take him out of the scope of the LHWCA.
 
 
 41
 Captain Ghotra was indistinguishable from any other person aboard the M/V Gracious. He was hired by K-Line to perform maritime tasks; he was an "employee" in the practical sense of the word. Moreover, he is entitled to pursue a claim against the vessel under section 905(b) of the Act. Given the paramount goal of uniformity and predictability and the peculiar circumstances of this case, we find the district court correctly found Captain Ghotra a "seafarer" within the meaning of Yamaha and affirm the district court's ruling that state wrongful death remedies are preempted by federal maritime law.
 
 V.
 
 42
 The district court held that the duty of care owed to Captain Ghotra was that of ordinary care under the circumstances. After reviewing the evidence presented at trial, the district court concluded that "under these circumstances, a low standard of care is applied."
 
 
 43
 The Ghotras argue that the district court erred by applying a lower standard of care. The Ghotras contend that the Vessel Interests owed Captain Ghotra a duty to exercise reasonable care under the circumstances even though he was an independent contractor. The Ghotras analogize this case to Cook v. Exxon Shipping Co., 762 F.2d 750, 751-52 (9th Cir.1985), cert. denied, 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986) and De Los Santos v. Scindia Steam Navigation Co., Ltd., 598 F.2d 480 (9th Cir.1979), aff'd, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). In Cook and De Los Santos, the Ninth Circuit held that where injury is caused by equipment or in an area under the direct or "active control" of the owner, the vessel owner owes a duty of reasonable care to a longshoreman.
 
 
 44
 The Vessel Interests contend that the district court did in fact apply the standard urged by the Ghotras, as set forth in Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630, 79 S.Ct. 406, 409-10, 3 L.Ed.2d 550 (1959). In Kermarec, the Supreme Court held that "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." 358 U.S. at 632, 79 S.Ct. at 410. In Peters v. Titan Navigation Co., 857 F.2d 1342, 1344 (9th Cir.1988), the Ninth Circuit held that the shipowners only owed Peters, a ship repairman working on board a vessel, "the ordinary negligence duty of reasonable care under the circumstances."
 
 
 45
 Kermarec and Peters set forth the proper standard to be applied and the district court properly articulated this standard of care. The shipowners owed Captain Ghotra a duty to exercise "reasonable care" under the circumstances. Whether the Vessel Interests met the standard of reasonable care is a matter for the jury to determine upon remand.
 
 VI.
 
 46
 The Ghotras claim that they raised a genuine issue of material fact precluding summary judgment on the issue of recovery for post-injury, predeath pain and suffering. The Ghotras proffered expert testimony from Dr. Stephen C. Acosta that Captain Ghotra may have been conscious for at least ten seconds after the fatal injuries, entitling them to jury consideration of damages for predeath pain and suffering. See Southern Pac. Co. v. Heavingham, 236 F.2d 406, 409-10 (9th Cir.1956).
 
 
 47
 In contrast, the Vessel Interests argue that summary judgment was appropriate here because, at best, the decedent only experienced a short period of insensibility between his fatal injury and death. St. Louis, Iron Mountain, & S. Ry. Co. v. Craft, 237 U.S. 648, 655, 35 S.Ct. 704, 705, 59 L.Ed. 1160 (1915). The Vessel Interests contend that federal courts have not generally allowed recovery for predeath pain and suffering in cases, such as here, where death resulted from sudden and severe accident or impact. They maintain that the Ghotras do not meet the threshold test set forth by the Supreme Court in Great N. Ry. Co. v. Capital Trust Co., 242 U.S. 144, 37 S.Ct. 41, 61 L.Ed. 208 (1916) which established that the decedent must be conscious for an "appreciable period of time" after sustaining his injuries to allow recovery for predeath pain and suffering. See also Cook v. Ross Island Sand & Gravel Co., 626 F.2d 746, 750 (9th Cir.1980) (drowning case); Heavingham, 236 F.2d at 409 (asphyxiation/burning case).
 
 
 48
 It is well-established that "pain and suffering substantially contemporaneous with death or mere incidents to it, as also the short periods of insensibility which sometimes intervene between fatal injuries and death, afford no basis for a separate estimation or award of damages" for predeath pain and suffering. Capital Trust, 242 U.S. at 147, 37 S.Ct. at 42 (citing Craft, 237 U.S. at 658, 35 S.Ct. at 706). Moreover, the Ninth Circuit has held that before a decedent's beneficiary may recover for the decedent's predeath pain and suffering, the beneficiary must show "that the decedent was conscious for at least some period of time after he suffered the injuries which resulted in his death." F/V Carolyn Jean, Inc. v. Schmitt, 73 F.3d 884, 885 (9th Cir.1995) (quoting Ross Island Sand & Gravel, 626 F.2d at 749-50). In Ross Island Sand & Gravel, this court stated that it would "not adopt a 'stop watch' approach to the question of whether a decedent remained conscious for a legally substantial period of time after he sustained the injuries," but that it would determine whether the decedent remained conscious for an "appreciable length of time" on a case by case basis. 626 F.2d at 751.
 
 
 49
 Here, eyewitness testimony and the autopsy report indicate that Captain Ghotra was not observed to be conscious at any time after injury and prior to death. The eyewitnesses state that Captain Ghotra sustained massive internal injuries and did not regain consciousness after the accident. The only evidence in opposition is Dr. Acosta's declaration that it is "highly likely" that Captain Ghotra was conscious for at least ten seconds following the accident.
 
 
 50
 Under the facts here, ten seconds of insensible consciousness does not meet the "appreciable period of time" threshold for recovery of predeath pain and suffering damages. See Craft, 237 U.S. at 655, 35 S.Ct. at 705 (thirty-minute period of consciousness after railroad car passed over a man's body and lacerated his abdomen was a case "close to the border line" for recovery of predeath pain and suffering); Cook, 626 F.2d at 748 (two and one-half minutes submerged in water sufficient for recovery because drowning victim experienced a period of "heightened awareness" prior to death). There is no evidence in this case indicating that this "highly likely" period of "consciousness" differs from the "periods of insensibility which sometimes intervene between fatal injuries and death" or that Captain Ghotra experienced a period of "heightened awareness" following his injuries, to make his beneficiaries eligible to recover damages for predeath pain and suffering. Viewed in the light most favorable to the Ghotras, Dr. Acosta's testimony fails to raise a genuine issue of material fact that the victim remained conscious for an appreciable period of time. Therefore, we affirm the district court's ruling on summary judgment that damages for predeath pain and suffering are not warranted in this case.
 
 VII.
 
 51
 For the foregoing reasons, we reverse the order of the district court striking the Ghotras' demand for jury trial, and remand the case in accordance with the other rulings contained herein. The decision appealed from is REVERSED IN PART and AFFIRMED IN PART and REMANDED for NEW TRIAL.
 
 
 
 *
 Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 The Ghotras settled with K-Line before trial and K-Line was dismissed as a party from this suit pursuant to stipulation
 
 
 [2]
 Federal Rule of Civil Procedure 38(a) provides in full: "The right of a trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." 38(e) clarifies that "These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)."
 
 
 [3]
 Illustrated by footnote 1 of the district court's order, which found meritless the Ghotras' attempt to characterize the claims as common law claims by noting that under California law, a wrongful death action is purely statutory
 
 
 [4]
 The Seventh Amendment provides in relevant part: "In Suits at common law, where the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved, ..."
 
 
 [5]
 Federal Rule of Civil Procedure 42(a) provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."